The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Wayne Robert STEWART,
Defendant–Appellant.

No. 98CA0838.

Colorado Court of Appeals,
Div. V.

June 22, 2000. *

Rehearing Denied July 27, 2000.

Certiorari Granted June 25, 2001.

* Prior Opinion Announced November 12, 1999, *WITHDRAWN.* Petition for Rehearing *GRANT-ED.*

Ken Salazar, Attorney General, Barbara McDonnell, Chief Deputy Attorney General, Michael E. McLachlan, Solicitor General, Robert Mark Russel, Assistant Solicitor General, Kathleen M. Byrne, Special Assistant Attorney General, Katherine A. Hansen, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee

David F. Vela, Colorado State Public Defender, Cynthia Camp, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant

Opinion by JUDGE ROY

Defendant, Wayne Robert Stewart, appeals the judgment of conviction entered upon a jury verdict finding him guilty of reckless second degree assault. We reverse the judgment and remand. We also vacate the trial court order granting an appeal bond to defendant.

On March 23, 1997, as defendant was exiting a restaurant parking lot in his car, he passed very close to three persons (victims). This resulted in an escalating confrontation. According to the prosecution's evidence, this

confrontation culminated in defendant driving his vehicle into the principal victim, throwing him up on the hood. Defendant then stopped his vehicle, the principal victim rolled off the hood, and defendant drove over his head causing serious injury. Subsequent to the trial in this matter, the principal victim died.

Other witnesses, including defendant, testified that the principal victim jumped up on the hood rather than being thrown there. Also, there is conflict in the evidence as to whether defendant stopped after the principal victim rolled off the hood and before defendant proceeded forward, running over that victim's head.

Defendant was initially charged with first degree assault, § 18–3–202, C.R.S.1999, and reckless vehicular assault, § 18–3–205(1)(a), C.R.S.1999, as to the principal victim and reckless endangerment as to the remaining victims. The jury was instructed on reckless second degree assault as a lesser included offense to first degree assault and independently instructed on reckless vehicular assault and careless driving resulting in injury, § 42–4–1402, C.R.S.1999, all with reference to the principal victim. The jury was also instructed as to intervening cause on the charges of reckless vehicular assault and careless driving resulting in injury. Defendant was convicted of, and does not appeal, two counts of reckless endangerment as to the two victims not struck by the car. As to the principal victim, he was convicted of reckless second degree assault.

## I.

Defendant first contends that, under the circumstances here, his conviction of second degree assault denies him equal protection of the laws because the statute under which he was convicted, § 18–3–203(1)(d), C.R.S.1999, proscribes the same conduct forbidden by the reckless vehicular assault statute, § 18–3–205, C.R.S.1999, but carries a disproportionately greater penalty. We agree.

■ Statutes are presumed to be constitutional. *People v. Fuller*, 791 P.2d 702 (Colo.1990). When two criminal statutes prescribe different penalties for identical conduct, a defendant convicted and sentenced under the harsher statute is denied his or her constitutional right to equal protection of the laws. *People v. Oliver*, 745 P.2d 222 (Colo.1987). However, two statutes do not violate equal protection guarantees if there is a rational basis for disparate sanctions. *People v. Brewer*, 720 P.2d 596 (Colo.App.1985).

■ A person may be prosecuted for more than one offense when such person's conduct establishes more than one offense. Section 18–1–408(1), C.R.S.1999; *see also People v. James*, 178 Colo. 401, 497 P.2d 1256 (1972).

■ The fact that a single act may give rise to more than one criminal violation does not, by itself, create an equal protection question. *People v. Madril*, 746 P.2d 1329 (Colo.1987). Equal protection does, however, require statutory classifications of crimes to be based on differences that are real and reasonably related to the general purposes of criminal legislation. *People v. Onesimo Romero*, 746 P.2d 534 (Colo.1987).

Section 18–3–203(1)(d) provides that a person commits the crime of reckless second degree assault if:

He recklessly causes serious bodily injury to another person by means of a deadly weapon. . . .

Reckless vehicular assault, § 18–3–205(1)(a), C.R.S.1999, is defined as follows:

If a person operates or drives a motor vehicle in a reckless manner, and this conduct is the proximate cause of serious bodily injury to another, such person commits vehicular assault.

Reckless second degree assault is a class four felony, requires mandatory sentencing to incarceration pursuant to § 16–11–309, C.R.S.1999, and carries a sentencing range of five to sixteen years. Sections 18–3–203(2)(c), 18–1–105(1)(a), C.R.S.1999. In contrast, reckless vehicular assault is a class five felony, does not require mandatory sentencing to incarceration, and has a sentencing range of one to three years and an aggravated range of one and a half years to six years. Sections 18–3–205(1)(a), 18–1–105(1)(V)(A), (9)(a), C.R.S.1999.

Here, defendant contends that reckless vehicular assault and reckless second degree assault are indistinguishable from one another. In support of this contention, defendant points out that, under both statutes, the jury must determine whether the accused acted "recklessly," and caused "serious bodily injury" to another. Defendant also contends that his motor vehicle was the "deadly weapon" relied upon by the prosecution to prove reckless second degree assault. We agree with defendant.

While phrased differently, the mens rea for the two offenses is, as the People have conceded, the same. *See People v. Pena,* 962 P.2d 285 (Colo.App.1997). The jury was instructed on "recklessly" as that term is defined by § 18–1–501(8), C.R.S.1999.

We also note that the causation language differs in the two statutes. That is, the second degree assault statute requires that a defendant "cause" serious bodily injury while the reckless vehicular assault statute requires that defendant's conduct be the "proximate cause" of serious bodily injury. However, for our purposes here, we consider the two terms to be synonymous. *See COLJI–Crim.* Nos. 9:3 & 9:4 (1993 Supp.). The People have not argued to the contrary.

Since these linguistic discrepancies are without significance, an analysis of the two statutes leads us to conclude that proof of the elements of reckless second degree assault will not always establish the elements of reckless vehicular assault because there are deadly weapons other than a motor vehicle. However, if the deadly weapon at issue is a motor vehicle, then proof of the elements of reckless vehicular assault will necessarily establish the elements of reckless second degree assault.

■ Under § 18–1–901(3)(e), C.R.S.1999, a deadly weapon is defined to include almost anything which, in the manner used or intended to be used, is capable of producing death or serious bodily injury. Hence, a motor vehicle can certainly be a deadly weapon, but whether it is presents a question of fact. *J.D.C. v. District Court,* 910 P.2d 684 (Colo.1996); *People v. Lucero,* 985 P.2d 87 (Colo.App.1999).

The People argue that the statutes are intended to apply in different circumstances. They contend that the reckless vehicular assault statute is intended to apply in those instances when a defendant drives a vehicle recklessly, thereby causing an accident and the seriously injured victim is selected by happenstance. Reckless second degree assault, so the argument goes, is intended to apply to those circumstances in which a victim is first identified and a defendant recklessly and seriously injures the victim with a deadly weapon. Whatever the merits of this argument, it was not recognized by the prosecution at trial. The prosecution charged both, tried both, tendered instructions as to both, and argued both, without restriction or limitation, and without pointing out any distinction between the two.

■ In addition, the prosecution's argument grafts a mental state onto reckless second degree assault that is not required or contemplated by the statute. That is, a defendant must intend that the instrumentality, the motor vehicle, be, or become, a deadly weapon. That knowledge or intent is not an element of second degree assault. *See* § 18–3–203, C.R.S.1999.

■ Accordingly, since, in those cases in which the deadly weapon is a motor vehicle, the statutes proscribe identical conduct with widely disparate penalties, we conclude that defendant's conviction of second degree assault violates his right to equal protection.

■ In criminal proceedings, the established remedy for an equal protection violation is to vacate the conviction of the greater offense and remand for an entry of judgment and resentencing under the lesser offense, *see People v. Mumaugh,* 644 P.2d 299 (Colo.1982), or for retrial on the lesser offense. *People v. Calvaresi,* 188 Colo. 277, 534 P.2d 316 (1975). Here, however, defendant was tried and acquitted of the lesser offense; therefore, retrial on the lesser offense would implicate the defendant's constitutional protection against double jeopardy under both the Fifth Amendment and Colo. Const. art. II, § 18.

An alternative remedy would be to leave defendant's conviction of reckless second de-

gree assault undisturbed but remand for resentencing within the sentence range for reckless vehicular assault. The immediate problem with this remedy is that it would result in an illegal sentence for reckless second degree assault, as the penalty range for it and the penalty range for reckless vehicular assault do not overlap.

This alternative remedy has, however, been used under similar circumstances in *People v. Bramlett*, 194 Colo. 205, 573 P.2d 94 (1977), in which the defendant was convicted of first degree assault, as opposed to the lesser offense of criminally negligent homicide. There, the supreme court found an equal protection violation in regard to the presentation of an affirmative defense and remanded the matter for a new trial on the charge of first degree assault with the proviso that should the defendant be convicted of that offense, the sentence would be imposed under the criminally negligent homicide statute. At the time, the sentencing ranges of the two offenses at issue did not overlap, and, perhaps more significantly, one offense was a felony calling for a penitentiary sentence, while the other was a misdemeanor in which a jail sentence was specified.

While this alternative does not, in our view, fully vindicate defendant's equal protection rights in that he remains convicted of the more serious offense, the gravamen of an equal protection issue is the disparity in penalty, not the disparity in the classification of the offense. Therefore, we vacate defendant's sentence. We also conclude that the judgment of conviction for reckless second degree assault cannot stand for the reasons hereinafter set forth; therefore, if defendant is retried, and again convicted of that offense, he should be sentenced, for all purposes, under the reckless vehicular assault statute and, more particularly, without any requirement of mandatory incarceration pursuant to § 16–11–309, C.R.S.1999.

## II.

Defendant next contends that it was plain error for the trial court to fail to instruct the jury with respect to the affirmative defense of "independent intervening cause." We conclude that plain error did occur, necessitating reversal of the reckless second degree assault conviction.

The focus of the affirmative defense of independent intervening cause is that the injury was not the natural and probable consequence of the unlawful act or conduct of the defendant, but rather resulted from an independent intervening cause.

At the request of the defendant, the trial court gave the following instruction (Instruction 25) on independent intervening cause:

It is the Defendant's theory that the injury to [the principal victim] was caused by the act of [the principal victim] jumping onto the hood and left front fender above the front left tire of the defendant's automobile as he was in the process of leaving the location.

*To warrant a conviction for Vehicular Assault or Careless Driving resulting in injury, the injury must be the natural and probable consequence of the defendant's unlawful act, and the (sic) not the result of an independent intervening cause in which the defendant does not participate, and which he could not foresee. If it appears that the act of the defendant was not the proximate cause of the injury for which he is being prosecuted, but that another cause intervened, with which he was in no way connected and but for which the injury would not have occurred, such supervening cause is a defense to the charges of Vehicular Assault and Careless Driving resulting in injury.*

For an intervening cause to exist, it must be an act of gross negligence on the part of [the principal victim]. An act of gross negligence is one in which there is abnormal human behavior on the part of [the principal victim], which would not have been reasonably foreseeable and but for that act of gross negligence, the injury would not have occurred, and one in which the defendant does not participate.

If you entertain a reasonable doubt as to whether the injury to [the principal victim] was caused by his own acts, you must find the defendant not guilty of Vehicular Assault or Careless Driving Resulting in injury. (emphasis added)

After deliberations commenced, the jury sent a question to the trial court stating:

Instruction 25: If both parties (principal victim and defendant) are culpable to some degree, is a conviction warranted? ~~What does proximate cause mean?~~

The trial court responded:

[Principal victim's] culpability must be an act of gross negligence which was not reasonably foreseeable by the Defendant. Consider this answer in relationship to Instruction No. 25.

With respect to the charge of reckless second degree assault, the jury was instructed that the defendant must have "recklessly caused serious bodily injury to another person." The term "cause" was not defined in the instructions but the term "proximate cause" was correctly defined and, though that term was not used in the elemental instruction, it was made applicable to reckless second degree assault. The instruction on independent intervening cause was expressly limited to reckless vehicular assault and careless driving involving injury to the exclusion of reckless second degree assault.

In *People v. Calvaresi,* 188 Colo. 277, 534 P.2d 316 (1975), the supreme court ruled that while simple negligence may not constitute an independent intervening cause, gross negligence does constitute behavior not reasonably foreseeable and is a defense to a homicide charge.

The classic independent intervening cause is an event occurring after the injuring event giving rise to civil liability, such as grossly negligent health care, which aggravates an injury, or which causes or contributes to the victim's death. *See, e.g., People v. Calvaresi, supra* (medical care).

The issue of whether the gross negligence of the victim can form the basis for the affirmative defense of independent intervening cause has not been explicitly addressed in Colorado. It has, however, been implicitly addressed in *People v. Garner,* 781 P.2d 87 (Colo.1989) and *People v. Gentry,* 738 P.2d 1188 (Colo.1987). In both cases, the victim stepped into the roadway in front of a vehicle driven by defendant. Also in both cases, the supreme court disapproved giving an instruc-

tion on intervening cause which did not require a finding that the victim was grossly negligent. There is no indication in those opinions that evidence of whether the victim's conduct could constitute an independent intervening cause was presented or considered.

Causation is always, or almost always, an issue which the prosecution must prove beyond a reasonable doubt and with respect to which the defense may, as was done here, seek to raise a reasonable doubt, an alternative theory, an affirmative defense, or all three.

Here, there is evidence in the record which, if believed, would support a finding that the following scenario occurred. When the defendant initially pulled forward, there was an open route for him to exit the parking lot safely. The victim, apparently in a highly agitated state, ran toward defendant's vehicle and leaped upon the left side of its hood in a sitting position. The defendant stopped, the victim fell off the hood onto the pavement on the left side and partially under defendant's vehicle, and was severely injured when the defendant again pulled forward.

Thus, a reasonable jury could conclude from the evidence presented that in rushing toward and leaping upon a moving vehicle, the principal victim acted in a grossly negligent, if not reckless or intentional, manner. It could also conclude that such conduct was the cause, or a contributing cause, of the principal victim's injuries; that the conduct was not, or could not have been, foreseen by the defendant; and that the defendant did not participate in the conduct.

The prosecution argues that the reckless conduct underlying the reckless second degree assault conviction should be isolated to the final act of defendant pulling forward without verifying the location of, or risk to, the principal victim. Whatever the merits of that argument, it was not the position taken by the People at trial.

We therefore conclude that it was error not to give the jury an independent intervening cause instruction applicable to reckless second degree assault. However, defendant did not tender such an instruction;

thus, the question becomes whether the error constitutes plain error.

Plain error is error that substantially affects a fundamental right of a defendant and casts serious doubt upon the fairness of trial proceedings and the validity of a conviction. To prevail on a claim of instructional plain error, the defendant must demonstrate not only that the instruction affected a substantial right, but also that the record reveals a reasonable possibility that the error contributed to defendant's conviction. *People v. Garcia*, 1 P.3d 214, (Colo.App.1999).

Defendant's argument of plain error in regard to this omitted instruction is premised, to a considerable extent, on the fact that the independent intervening cause instruction was given as to reckless vehicular assault, of which the defendant was acquitted, and not as to reckless second degree assault, of which he was convicted. This, taken with the fact that we have previously concluded that the two offenses prohibit identical conduct compels the conclusion that the failure to instruct on independent intervening cause affected a fundamental right of a defendant and casts serious doubt upon the fairness of trial proceedings and the validity of a conviction.

Therefore, defendant's conviction of reckless second degree assault cannot stand, and defendant is entitled to a new trial on that charge. Further, in the event the matter is similarly postured at the close of the evidence, the independent intervening cause instruction should be given on the charge of reckless second degree assault.

### III.

Because the issue may arise on retrial, we address defendant's argument that the trial court erred in permitting a prosecution expert to testify as to the principal victim's condition at the time of his discharge from his initial hospitalization after defendant had stipulated to serious bodily injury and it had already been established through other testimony. We perceive no error in the court's treatment of the matter.

The prosecution initially established serious bodily injury through the testimony of a neurosurgeon who had examined the principal victim in the emergency room and then performed emergency surgery on him. The defendant stipulated to the qualifications of the neurosurgeon as an expert witness and did not cross-examine him.

The neurosurgeon testified to the extent of the injuries and to symptoms of the victim indicating massive brain injury. The neurosurgeon then expressed the opinion that the injuries constituted serious bodily injury after the legal definition of that term was read to him.

The next day, and over the defendant's objection, the prosecution called as an expert witness an internist who had been one of the principal victim's treating physicians during his initial hospitalization. Again, the defendant stipulated to the witness' qualifications and did not cross-examine her.

The internist testified that the principal victim was completely dependent on others for his daily needs, including eating, bathing, and toileting; that he could not turn over in bed, interact with his environment, or reliably follow with his eyes. The internist, after being read the definition, expressed the opinion that the principal victim had suffered serious bodily injury, and then expressed the view that she did not expect him to recover his faculties to any extent.

The prosecution initially offered the testimony on the grounds that evidence of the permanent and devastating impact of the injuries on the principal victim's life was required to prove serious bodily injury beyond a reasonable doubt. The defendant stipulated to serious bodily injury.

The prosecution, without abandoning its original proffer, then argued that the evidence went to the defendant's mental state, that is, the certainty of the result. The argument was that the injuries were so pervasive and permanent that the defendant had to be on notice that driving over a person's head was practically certain to cause serious bodily injury.

The trial court allowed the testimony on the latter theory with a limiting instruction. The trial court further indicated that the

testimony was not relevant on the issue of serious bodily injury in light of the defendant's stipulation on that issue.

■ At the outset, we note that the prosecution has the right to prove its case and is not required to accept the defendant's stipulation as to certain facts unless the prejudicial impact on the jury outweighs the probative value of the evidence. *People v. McGregor*, 757 P.2d 1082 (Colo.App.1987).

■ Trial courts have broad discretion in weighing the probative value of evidence against any undue prejudicial impact on a jury. *People v. Rubanowitz*, 688 P.2d 231 (Colo.1984). The probative value of the evidence on the issue of defendant's mental state is, at best, marginal. The gravity of an injury does have some probative value of the certainty of serious injury which is, in turn, a consideration in determining defendant's mental state of "knowingly" or "recklessly."

Here, while the probative value of the testimony was not great, neither was its prejudicial impact. The testimony was brief, uncontroverted, antiseptic rather than graphic, and should not have come as any great surprise to a reasonable juror after hearing testimony as to how the injury occurred and the principal victim's condition upon admission to the hospital. In fact, it was a miracle of considerable proportions that the principal victim survived his injuries for as long as he did, and a considerable benefit to this defendant that he did so.

Therefore, in our view, the trial court did not abuse its discretion in admitting the testimony of the internist as to the permanent and extensive nature of the principal victim's injuries. Hence, under similar circumstances, such testimony would again be admissible on retrial.

## IV.

■ Again, because it may arise on retrial, we address defendant's argument that the trial court improperly permitted an investigating officer who was not qualified as an expert to testify as to his reconstruction of the incident. We agree.

At trial, the prosecution presented testimony from an investigating officer who, over timely objections, testified as to his investigation of the crime scene. The investigating officer testified that some skidmarks denoted acceleration of the vehicle in reverse. The officer testified regarding the angle and speed of the vehicle and the significance of a "squiggle mark," which he stated corresponded with the vehicle running over the principal victim's head.

The investigating officer also testified that he inspected defendant's impounded vehicle and observed a dent on the hood, a handprint, and scratch marks. The investigating officer testified that he took the defendant's vehicle back to the scene of the incident where he conducted experiments designed to provide an explanation as to the "squiggle mark," and participated in a reenactment of the incident event as described and demonstrated by one of the prosecution witnesses, a second version of which was videotaped. One of the purposes of reconstructing the incident at the scene was to explain the location, position, orientation, and features of the principal victim's hand print on the hood of the vehicle.

The investigating officer then expressed his opinions as to how the incident occurred based on the damage to defendant's vehicle, the marks on the pavement, the hand print, and the principal victim's injuries.

The officer testified that he had received 240 hours of instruction in the investigation of traffic accidents, some of which were intensive. Other than that testimony, the prosecution did not attempt to qualify the officer as an expert witness, nor was he offered as such. Without being expressly asked for an opinion, as such, the officer was asked, and was permitted to respond to, questions designed to elicit his interpretation of the evidence.

CRE 701 governs the admissibility of opinion testimony by lay witnesses:

If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his

testimony or the determination of a fact in issue.

In order for an opinion of a lay witness to be "rationally based on the perception of the witness," it must be based on personal knowledge. *See* CRE 602. If, however, the opinion or inference expressed is beyond common experience or is based on knowledge of a scientific, technical, or specialized nature, the rules of evidence require the witness to qualify as an expert in the subject matter that is the basis of his or her testimony. CRE 702.

A trial court has broad latitude in determining whether a lay witness is qualified to express opinions. Thus, only if there is an abuse of this discretion will the trial court's decision concerning the testimony be disturbed on review. *Hock v. New York Life Insurance Co.*, 876 P.2d 1242 (Colo.1994).

Here, we conclude that the trial court abused its discretion in permitting the officer to testify regarding his experimentation with respect to, and his reconstruction of, the incident without qualifying him as an expert witness. While the testimony was not encumbered with scientific terminology and the trappings of complex theories, it did involve considerably more than common experience and required practical knowledge of a scientific, technical, or specialized nature.

We are not saying that the testimony is necessarily beyond the expertise of a police officer who is well-trained and experienced in accident investigation and reconstruction or, for that matter, this investigating officer. What we are saying is that the investigating officer should not have been permitted to express his opinions, even though not so denominated, as to how the incident occurred based on his investigation without first being qualified as an expert witness. Accordingly, on retrial, qualification of the officer as an expert should precede any opinion testimony of the officer.

## V.

Next, we address an issue raised by the People based upon an opinion we issued in this matter on November 12, 1999.

In that opinion, we vacated defendant's conviction of reckless second degree assault on the grounds that the conviction violated defendant's equal protection rights. Following the issuance of that opinion, defendant applied for an appeal bond in the trial court. On November 22, 1999, the trial court released the defendant on an appeal bond of $10,000, cash or surety, with conditions.

On December 1, 1999, the People filed a "People's Emergency Petition for Appellate Review of Terms and Conditions of Appeal Bond." In that motion, the People argue that the trial court lacked jurisdiction to grant an appeal bond and that the granting of the appeal bond violated Article II, Section 19 of the Colorado Constitution. We requested a response to the motion and heard oral arguments on the issue.

At the outset, we note that our jurisdiction is premised on § 16–4–204, C.R.S.1999, which permits either party to seek review of the trial court's order granting or denying appeal bonds in the appellate court and that the review authorized by that section is the only method of obtaining appellate review.

## A.

The People first contend that the trial court did not have jurisdiction to grant an appeal bond without a remand from the appellate court. We disagree.

Section 16–4–201, C.R.S.1999, authorizes an appeal bond except in capital cases and contemplates that the request will be made, initially, in the trial court.

C.A.R. 9(b) provides:

Application for release after a judgment of conviction shall be made in the first instance in the trial court. If the trial court refuses release pending appeal, or imposes conditions of release, the court shall state in writing the reasons for the action taken. Thereafter, if an appeal is pending, a motion for release, or for modification of the conditions of release, pending review may be made to an appellate court, or justice or judge thereof. . . .

The rule also contemplates that application for an appeal bond will first be made in the trial court. This is appropriate since there

may need to be an evidentiary hearing to determine eligibility, fitness, financial terms, and special conditions. *See* § 16–4–202, C.R.S.1999 (factors to be considered in considering an appeal bond). Appellate courts are singularly ill-equipped to conduct such a proceeding.

■ It is apparent from both the rule and statute that a motion for an appeal bond may be filed and acted upon prior to the commencement of the appeal. What is not clear from the express terms of either the statute or the rule is the impact, if any, of the filing of a notice of appeal on the trial court's jurisdiction over appeal bonds.

The People rely to a considerable extent on *People v. Dillon,* 655 P.2d 841 (Colo.1982), for the proposition that the trial court lacked jurisdiction to grant an appeal bond. In *Dillon,* the defendant, after commencing his direct appeal and raising issues contained in his motion for new trial, realized he had not filed post-trial motions in the trial court. He then filed a motion in the trial court for leave to file motions for a new trial and for judgment notwithstanding the verdict. The trial court denied the motion, the defendant took another appeal from that denial, and the appeals were consolidated.

In affirming the trial court, the supreme court stated:

> The efficient administration of justice would not be served by a rule that permitted the trial court to reconsider its earlier rulings at the same time that an appeal is pending in an appellate court. Unless otherwise specifically authorized by statute or rule, once an appeal has been perfected, the *trial court has no jurisdiction to issue further orders in the case relative to the order or judgment appealed from.* Consequently, should it be necessary for the trial court to act, other than in aid of the appeal or pursuant to specific statutory authorization, the proper course would be for a party to obtain a limited remand from the appellate court.

*People v. Dillon, supra,* 655 P.2d at 844 (emphasis added).

■ For our purposes, the operative language of *Dillon* is that which is emphasized.

That is, the trial court retains jurisdiction to act with respect to matters which are not relative to, or do not affect, the order or judgment on appeal. *See also Molitor v. Anderson,* 795 P.2d 266 (Colo.1990). Thus, in *People v. Widhalm,* 991 P.2d 291 (Colo. App.1999), a division of this court held that a pending direct appeal in a criminal case did not deprive the trial court of jurisdiction to revoke probation.

■ In our view, the granting or denial of an appeal bond has no impact or bearing upon the underlying conviction or related issues pending on appeal. Therefore, the trial court retained jurisdiction, without the necessity of a remand, to consider defendant's application for an appeal bond filed after the commencement of the direct appeal.

B.

■ The People also argue that the trial court erred in concluding that the defendant was eligible for an appeal bond. We agree.

Article II, § 19 of the Colorado Constitution provides that a person convicted of a crime of violence, as defined by the General Assembly, is not eligible for bail pending sentencing or appeal. Colo. Const. art. II, § 19(2.5)(a). The definition of "crime of violence" includes reckless second degree assault. Section 16–11–309, C.R.S.1999.

The trial court reasoned that the original opinion issued by this division of the court vacating the defendant's conviction and sentence for reckless second degree assault meant there was no existing conviction of the defendant for that offense and, therefore, the constitutional prohibition against appeal bonds no longer applied to the defendant. We disagree.

■ A conviction is not final until the time within which an appeal must be taken has expired, or all appeals have been exhausted. *See People v. Hampton,* 876 P.2d 1236 (Colo.1994)(generally a conviction is not final and has no legal force until all appeals have been exhausted).

The intermediate court of appeals is but one stage of an appellate proceeding if, in fact, the supreme court reviews the matter.

This remains true when the defendant is successful in the intermediate appellate court and it is the People who prosecute the appeal further. *See Peterman v. State Farm Mutual Automobile Insurance Co.*, 8 P.3d 549, (Colo. 2000) (appellee entitled to post-judgment interest for the duration of the appellate process under a statute governing interest on appeal even though appellant was successful in the intermediate court and appellee sought further review, and was successful, in the supreme court, on the basis that it was only one appeal).

 It is apparent from the plain meaning of the constitution that a defendant convicted of a violent crime is to be denied appeal bond until the conviction becomes final following the exhaustion of all direct appeals. This is true even when, as is possible here, the defendant may ultimately be successful on appeal, acquitted upon retrial, and will have fully served his sentence.

** Sitting by assignment of the Chief Justice under provisions of the Colo. Const. art. VI, Sec. 5(3),

The judgment of conviction of reckless second degree assault is reversed, and the cause is remanded to the trial court for a new trial, in accordance with the views expressed in this opinion, with the proviso that should defendant be convicted of reckless second degree assault, he shall be sentenced as though he had been convicted of a class five felony and without the application of § 16–11–309, C.R.S.1999. In addition, the order of the trial court granting the defendant an appeal bond is vacated subject to any further appellate proceedings on that issue.

JUDGE TAUBMAN and JUDGE PIERCE**, concur.

and § 24–51–1105, C.R.S.1999.