24CA1954 Marriage of Brown 03-05-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA1954
City and County of Broomfield District Court No. 22DR30023
Honorable Mark D. Warner, Judge

In re the Marriage of

Jason Matthew Brown,

Appellant and Cross-Appellee,

and

Kimberly Quigley Brown,

Appellee and Cross-Appellant.

JUDGMENT AFFIRMED AND CASE
REMANDED WITH DIRECTIONS

Division VII
Opinion by JUDGE GOMEZ
Pawar and Johnson, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced March 5, 2026

Ciancio Ciancio Brown, P.C., Melinda S. Moses, Denver, Colorado, for Appellant and Cross-Appellee

Faegre Drinker Biddle & Reath, LLP, Mechelle Y. Faulk, Denver, Colorado, for Appellee and Cross-Appellant

¶ 1     Jason Matthew Brown (husband) appeals and Kimberly Quigley Brown (wife) cross-appeals the district court's judgment that dissolved their marriage.  We affirm and remand the case for further proceedings on the parties' requests for appellate attorney fees and costs under section 14-10-119, C.R.S. 2025.

## I.     Relevant Facts

¶ 2     The parties married in 1996.  During the marriage, husband and his business partners started a construction company called Basement Partners.  Husband later expanded his business operations to real estate development.  He and other investors purchased properties through separate entities, and they used Basement Partners to construct homes on the properties.  In 2013, wife, who for the previous ten years had served as a homemaker for the family, started a real estate brokerage company called 40th Parallel.  40th Parallel worked exclusively with husband to sell the homes constructed through his development ventures.

¶ 3     In 2024, the district court dissolved the marriage and entered permanent orders.  The court allocated the marital estate as follows (with all figures rounded to the nearest hundred):

|  | Marital Value | Husband | Wife |
|---|---|---|---|
| Real Estate | $1,661,000 | $475,800 | $1,185,200 |
| Bank Accounts[1] | $32,500 | $7,400 | $25,100 |
| Retirement Accounts | $1,746,000 | $989,500 | $756,500 |
| Investment Accounts | $2,471,200 | $1,153,200 | $1,318,000 |
| Businesses and Miscellaneous Assets | $1,051,500 | $850,000 | $201,500 |
| Debts | ($910,400) | ($455,200) | ($455,200) |
| Dissipated Assets | $186,000 | $23,500 | $162,500 |
| **TOTAL** | **$6,237,800** | **$3,044,200** | **$3,193,600** |

¶ 4     Moving to maintenance, the court determined that husband's gross income was $36,000 per month, which represented a six-year average of his adjusted income from Basement Partners and the real estate development companies.  The court determined that wife's gross income was $11,000 per month, using an average salary for a comparable professional.  It then directed husband to pay wife $7,000 per month in maintenance for ten years.

---

[1] The court's calculation of the bank account division was slightly off due to a math error.  The court evenly split a bank account worth $5,325, which equates to $2,662.50 each (which would round to $2,663), but the spreadsheet lists $2,263 for each spouse.

## II.    Property Division

¶ 5    Both parties challenge aspects of the district court's allocation of marital property.  We see no reversible error.

### A.    Standard of Review

¶ 6    The district court has latitude to equitably divide the marital estate based on the facts and circumstances of the case.  § 14-10-113(1), C.R.S. 2025; *In re Marriage of Collins*, 2023 COA 116M, ¶ 19.  We will not disturb the court's allocation absent a showing that it abused its discretion.  *Collins*, ¶ 19.  A court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair, or a misapplication of the law.  *In re Marriage of Medeiros*, 2023 COA 42M, ¶ 28.

### B.    Overall Allocation

¶ 7    The district court divided the marital assets and debts between the parties, resulting in wife receiving about $150,000 more than husband.  Husband contends that the court's disproportionate allocation was inequitable.  We disagree.

¶ 8    When dividing the marital estate, the district court considers the relevant factors and allocates assets and debts in such proportion as it deems just, ensuring an equitable, but not

necessarily equal, property division.  *See* § 14-10-113(1); *In re Marriage of Capparelli*, 2024 COA 103M, ¶ 9.

¶ 9     The court recognized that "[t]he division of property must be equitable, not equal" and, thus, that it was "not required to offset for all marital property awarded to either party."  It also found that "both parties contributed relatively equivalently to the marital estate."  *See* § 14-10-113(1)(a).  The court noted husband's financial contributions to the marriage and found that wife had contributed both financially and as a homemaker.  The court further recognized that, at that time, husband's financial circumstances surpassed wife's, noting his significantly higher income.  *See* § 14-10-113(1)(c).

¶ 10     The court weighed these factors and evidently determined that an allocation slightly increased for wife was equitable.  Although the court didn't expressly address its slightly unequal allocation, we are not convinced that it failed to sufficiently explain its decision.  *See In re Marriage of Bookout*, 833 P.2d 800, 805 (Colo. App. 1991).  And we conclude that, under the circumstances, the court's decision was not manifestly arbitrary, unreasonable, or unfair.  *See In re Marriage of Hunt*, 909 P.2d 525, 538 (Colo. 1995) ("[A]n appellate court must not disturb the delicate balance achieved by

4

the [district] court in [its] division of property . . . unless there has been a clear abuse of discretion.").

### C.    40th Parallel's Marital Value

¶ 11    Husband contends that the district court erred by finding that 40th Parallel, wife's real estate brokerage company, had a value of $25,500.  We see no error.

¶ 12    Valuing a marital asset is within the district court's discretion. *In re Marriage of Krejci*, 2013 COA 6, ¶ 23.  The court may select one party's valuation over the other party's, or it may make its own determination.  *Id.*  If the court's value is reasonable in light of the evidence as a whole, we will not disturb it.  *Id.*

¶ 13    The parties' joint expert reported that 40th Parallel was established with the sole intent of acting as the exclusive listing agency for husband's real estate projects with the development companies.  The joint expert said that if husband ended that relationship, the value of 40th Parallel would be limited to the value of its tangible assets.  Wife claimed that this was the most appropriate way to value 40th Parallel.  She also testified that husband could terminate their listing agreement at any time.

¶ 14    The court found that 40th Parallel's business relationship with husband "will end," and it determined that, in accordance with the present value of the company's tangible assets, 40th Parallel was worth $25,500.

¶ 15    Husband nonetheless argues that, when determining 40th Parallel's value, the court failed to consider the potential commissions wife could earn from her listing agreement with husband for the homes constructed by his real estate development company, which could be about $650,000 over the next four to six years.  But, as discussed below, the court declined to include wife's potential future commissions in 40th Parallel's value because it found, with record support, that the business relationship with husband would not continue.

¶ 16    The court thus acted within its discretion in valuing 40th Parallel based solely on its tangible assets.  And husband directs us to no legal authority that required the court to include the potential future commissions in 40th Parallel's value (or in wife's income).  *See In re Parental Responsibilities Concerning S.Z.S.*, 2022 COA 105, ¶ 29 (declining to address an undeveloped argument); *see also*

§ 14-10-113(5) (requiring the court to value property as of the date of the permanent orders hearing if it precedes the decree).

### D. Other Alleged Property Division Errors

¶ 17 The parties also raise other challenges to the district court's property division. Husband claims the court erred by finding that he dissipated $23,500 from the marital estate, allocating 40th Parallel to both parties, misallocating a bank account, and not allocating wife's $38,000 in cash. And wife claims the court erred by omitting the parties' interests in RFID, a startup software company, and JSLP, a build-for-rent development company. We disagree with many of the parties' contentions, but even if the court erred in some respects, we conclude that any errors, individually and collectively, are harmless.

### 1. Husband's Dissipation

¶ 18 The district court found that husband dissipated $23,500 from the marital estate for his improper spending during the dissolution proceedings on trips with his new significant other. Husband contends that this was error because no evidence showed that he spent this money improperly or for illegitimate purposes.

¶ 19　In extreme cases, the court may consider a party's economic fault when dividing the marital estate. § 14-10-113(1); *In re Marriage of Smith*, 2024 COA 95, ¶ 75. Economic fault may include a party's dissipation of marital assets for an improper or illegitimate purpose in contemplation of divorce. *Smith*, ¶ 75.

¶ 20　The court did little to explain how husband's spending rose to the level of economic fault. However, even if we were to assume that the court erred by finding that husband dissipated $23,500, as we explain in more detail below, any error by the court amounted to such a small portion of the marital estate that it was harmless. *See* C.A.R. 35(c).

### 2.　40th Parallel's Allocation

¶ 21　Husband next contends that the court misallocated the $25,500 value of 40th Parallel by attributing that value to both husband and wife in its property division spreadsheet. While the court mistakenly included the value of this asset under each party's column on the spreadsheet, the court unambiguously allocated 40th Parallel to wife in its written judgment. (The court adopted a transcript of its oral ruling as its written permanent orders judgment.) Husband doesn't dispute that the court properly

allocated 40th Parallel to wife in its permanent orders, and to the extent that the spreadsheet may conflict, the written judgment prevails. *Cf. People in Interest of S.R.N.J-S.*, 2020 COA 12, ¶ 16 (recognizing that a written order prevails when there is a conflict).

### 3. KeyBank Account

¶ 22 The court allocated a $17,600 KeyBank account to wife. This bank account was associated with a limited liability company created by the parties for their vacation property. Husband argues that the court misallocated the bank account because the court split the equity of the vacation property (allocating sixty percent to husband and forty percent to wife) and should have adhered to the same allocation for the bank account.

¶ 23 However, the court acted within its broad discretion in allocating the vacation property separately from the KeyBank account. Husband directs us to no legal authority that required the court to allocate these two assets in the exact same manner. *See S.Z.S.*, ¶ 29. Nor does he show that the court abused its discretion by allocating the KeyBank account entirely to wife. *See Hunt*, 909 P.2d at 538; *Collins*, ¶ 19.

9

#### 4. $38,000 in Cash

¶ 24    Husband highlights that, at the hearing, wife admitted that she had in her possession $38,000 in cash, and he argues that the court failed to include this money in its allocation of the marital estate.  Although the court didn't directly allocate that $38,000, again, as we explain below, any error from the court's omission doesn't rise to the level of reversible error.  *See* C.A.R. 35(c).

#### 5. RFID

¶ 25    Wife contends that the court erred by not allocating the parties' interest in RFID.  Although the court didn't mention RFID in its written permanent orders, the court informed the parties that it would send them a spreadsheet of its property division.  And in that spreadsheet, the court allocated RFID by directing the parties to "SPLIT" the asset.  While the court didn't formally enter the spreadsheet into the court file, wife doesn't dispute the contents of the court's spreadsheet, and when, as here, the spreadsheet doesn't conflict with the written judgment, the spreadsheet may supplement the judgment.  *See In re Marriage of Thorburn*, 2022 COA 80, ¶ 9 n.1.  We therefore are not persuaded that the court's omission of RFID from its written permanent orders or its failure to

10

formally adopt the spreadsheet in the court file warrants reversing the judgment.

### 6.    JSLP

¶ 26    Wife also contends that the court failed to allocate the parties' interest in JSLP.  It is true that the court didn't specifically mention JSLP in its property division.  But at the hearing, neither party presented evidence on JSLP's present value and husband explained that it was just an income-generating asset.  Importantly, the parties also told the court that they agreed to split this asset.

¶ 27    In its permanent orders, the court acknowledged that the parties had reached "many stipulated distributions," and it indicated that it wouldn't disturb their stipulations.  The court thus implicitly accepted the parties' agreement to split the equity from JSLP and allocated the asset accordingly.  *See S.Z.S.,* ¶ 21 (recognizing that a court's finding may be implicit); *In re Marriage of Rodrick,* 176 P.3d 806, 815 (Colo. App. 2007) (noting that it's the parties' duty to present the court with the data needed to make a valuation).

### 7. Harmless Error

¶ 28 In any event, a court's errors in the marital property division are reversible only when the aggregate effect of the errors affects the parties' substantial rights. *See* C.A.R. 35(c); *In re Marriage of Balanson*, 25 P.3d 28, 36 (Colo. 2001). Therefore, errors that affect only a small percentage of the overall marital estate are harmless and don't warrant reversing the court's judgment. *See Balanson*, 25 P.3d at 38 (suggesting that property division errors affecting less than two percent of the marital estate are harmless but errors affecting over twenty percent are not); *see also In re Marriage of Powell*, 220 P.3d 952, 957, 959 (Colo. App. 2009) (upholding the district court's refusal to use an expert's valuation of property that would have increased the marital estate by only 6.6%, in part because it didn't materially impact the property division).

¶ 29 Even if we were to assume that the court misallocated or improperly omitted any of the marital assets discussed above, we conclude that such errors were harmless. When we consider the purported errors individually and in combination, they affect a small percentage of the over $6.2 million marital estate. Concerning the assets disputed by husband, the values of those

purported errors were $23,500 for his dissipation, $25,500 for 40th Parallel, $17,600 for the KeyBank account, and $38,000 for wife's cash. This totals $104,600, which is only 1.7% of the marital estate. And for the assets contested by wife, the record reveals that, at most, RFID was worth $50,000 and JSLP was worth about $162,000. Together, these assets amount to only 3.4% of the marital estate.

¶ 30     In sum, the court allocated the marital estate within its discretion, and any errors the court may have committed were harmless.

### III.   Maintenance

¶ 31     Husband and wife both challenge the district court's ruling on maintenance. Husband contends that the court didn't make sufficient findings in support of its decision and incorrectly determined the parties' gross incomes. Wife contends that the court erred by not ordering husband to secure his maintenance obligation with a life insurance policy. We reject both parties' contentions.

13

## A. Standard of Review

¶ 32 We review a district court's determination on maintenance for an abuse of discretion and will not disturb the court's decision absent a showing that the court acted in a manifestly arbitrary, unreasonable, or unfair manner or that it misapplied the law. *Medeiros*, ¶¶ 28, 58.

## B. Sufficient Findings

¶ 33 The district court made the necessary maintenance findings, it sufficiently explained its decision, and the record supports that decision. We therefore disagree with husband's contention that maintenance must be reversed for inadequate findings.

¶ 34 When a district court considers maintenance, it must first make findings on the parties' incomes, the distribution of marital property, the parties' financial resources, their reasonable financial needs established during the marriage, and the taxability of any maintenance awarded. § 14-10-114(3)(a)(I)(A)-(E), C.R.S. 2025.

¶ 35 Then, the court must consider an amount and term of maintenance, if any, that is fair and equitable. § 14-10-114(3)(a)(II). To do so, the court considers a nonexclusive list of statutory factors, and, as relevant here, it may consider the statutory

14

guidelines on the term of maintenance. § 14-10-114(3)(a)(II)(B), (3)(c); *see also* § 14-10-114(3.5) (describing the guideline methodology for parties with combined annual adjusted gross incomes exceeding $240,000). Before awarding maintenance, the court must determine that the requesting party lacks sufficient property to provide for their reasonable needs and is unable to support themself through appropriate employment. § 14-10-114(3)(a)(II)(C), (3)(d).

¶ 36    In this case, the court found that

- wife's gross income was $11,000 per month and husband's gross income was $36,000 per month, *see* § 14-10-114(3)(a)(I)(A), (3)(a)(I)(C), (3)(c)(I)-(II);

- each party received "a fair amount" of the over $6.2 million marital estate, *see* § 14-10-114(3)(a)(I)(B), (3)(a)(I)(C), (3)(c)(I)-(II), (3)(c)(IV);

- the parties "lived comfortably," "enjoyed stable housing in a desirable neighborhood," and were able to meet "the needs of the family," *see* § 14-10-114(3)(a)(I)(D), (3)(c)(III); and

- maintenance was not taxable or tax deductible, *see* § 14-10-114(3)(a)(I)(E), (3)(c)(XII).

¶ 37    Then, addressing the additional relevant statutory factors, the court found that

- the parties were in good health, roughly the same age, and about ten years away from the typical age of retirement, *see* § 14-10-114(3)(c)(IX);

- the parties contributed "relatively equivalently to the marital estate," *see* § 14-10-114(3)(c)(X);

- wife had reported "several inflated expenses," *see* § 14-10-114(3)(c)(I); and

- the marital property allocated to wife didn't eliminate her need for maintenance, *see* § 14-10-114(3)(c)(IV), (3)(d).

¶ 38    Based on this record, we conclude that the court made the required findings, addressed relevant statutory factors, and provided us with a sufficient understanding of the basis of its decision to award wife $7,000 per month in maintenance for ten years.  *See* § 14-10-114(3)(e); *see also In re Marriage of Wright*, 2020 COA 11, ¶ 20 (noting that the district court must give the reviewing court a clear understanding of the basis of its maintenance order,

but it "has no obligation to make specific factual findings on every factor listed in section 14-10-114(3)(c)").

¶ 39    Moreover, because the record supports the court's maintenance award, we will not disturb it. *See In re Marriage of Atencio*, 47 P.3d 718, 722 (Colo. App. 2002). The evidence showed that the parties were married for twenty-eight years; wife stayed at home to care for the family for over ten years; and while wife returned to the work force in 2013, husband historically earned a higher income and at the time still earned more than three times as much as wife. And wife testified that she was unable to meet her reasonable needs without maintenance. She also explained that her earnings from 40th Parallel relied on the exclusive real estate listing agreement she had with husband and that she was unsure whether their business relationship could continue.

¶ 40    Husband disputes the ten-year maintenance term, but under the statutory guidelines, when a marriage exceeds twenty years, "the court shall not specify a maintenance term that is less than" ten years, unless it makes specific findings to support a reduced term. § 14-10-114(3)(b)(II)(A)-(B), (3.5). The parties' marriage

exceeded twenty years, and the court made no findings to support reducing the statutory ten-year term.

¶ 41 Husband also argues that wife didn't meet the threshold need for maintenance. *See* § 14-10-114(3)(d). However, it was for the district court, not us, to evaluate the conflicting evidence on this issue. *See Thorburn*, ¶ 49 ("[C]redibility determinations and the weight, probative force, and sufficiency of the evidence, as well as the inferences and conclusions to be drawn therefrom, are matters within the sole discretion of the [district] court." (alterations in original) (quoting *In re Marriage of Lewis*, 66 P.3d 204, 207 (Colo. App. 2003))). We may not reweigh that evidence and set aside the court's decision when, as here, it has record support. *See In re Marriage of Evans*, 2021 COA 141, ¶ 45.

¶ 42 Husband further argues that the court's maintenance determination was inconsistent with its finding that wife had "several inflated expenses" on her sworn financial statement, in which she reported monthly expenses that totaled over $30,000. But a party's reasonable needs for purposes of maintenance are not limited to an amount that merely satisfies their basic needs. *In re Marriage of Yates*, 148 P.3d 304, 313 (Colo. App. 2006). The court

liberally construed wife's reasonable needs based on the facts and circumstances, including the parties' "comfortabl[e]" lifestyle, and it determined that $7,000 per month was a fair and equitable maintenance amount. *See* § 14-10-114(3)(e); *Yates*, 148 P.3d at 313; *see also In re Marriage of Thornhill*, 232 P.3d 782, 789 (Colo. 2010) (recognizing that the parties' standard of living during the marriage may be a "starting point" for the court's determination of a party's reasonable needs). Even husband acknowledged that wife's needs were at least $13,000 per month.

¶ 43   Husband next claims that the court "did not address" the future commissions wife could earn from her listing agreement with husband for the homes being constructed for his present development company. Not so. The court found that "[a]ssuming" those homes sell "over the next four to six years," wife could receive "approximately $650,000" in commissions, which could be attributed to the value of 40th Parallel or to wife's future income. But the court went on to find that, due to the divorce, the business relationship with husband's development company "will end," and it declined to speculate that the commissions would continue. The court therefore addressed the potential future commissions and did

not find that they alleviated wife's need for maintenance. *See* § 14-10-114(3)(c)(I), (V), (3)(d).

¶ 44 To the extent that husband further contests the court's consideration of the parties' respective incomes, we discern no error and will further address those contentions in our discussion below on the court's income determinations.

¶ 45 In sum, the court's findings are supported by the record, adhered to the statute, and sufficiently explained the court's maintenance decision.

## C. Husband's Income

¶ 46 Husband contends that the district court improperly determined his gross income by including his total income from the real estate development companies and using an average of his total income over the past six years. We disagree.

¶ 47 When considering maintenance, the district court must determine the parties' gross income. § 14-10-114(3)(a)(I)(A), (8)(a)(II). A party's gross income may include income from partnerships, closely held corporations, or limited liability companies "except that, if a party is a passive investor, has a minority interest in the company, and does not have any

20

managerial duties or input, then the income to be recognized may be limited to actual cash distributions received." § 14-10-114(8)(c)(I)(W). If a party's income fluctuates or there is conflicting evidence regarding the amount, the court may, in its discretion, use an average of the party's past income. *Capparelli,* ¶ 32.

¶ 48    The court found that wife's expert witness, Tiffany Nelson, provided "the most credible" evidence on husband's gross income, and, in accordance with Nelson's opinion, determined that his gross income was $36,000 per month.

¶ 49    Nelson opined that husband's income, which came from Basement Partners and the development companies, should not be limited to the actual cash distributions he received. Nelson explained that husband was not a passive investor in the entities, and she described that (1) husband was president and CEO at Basement Partners; (2) he managed all of the development projects; (3) Basement Partners and the development companies were "commingled"; and (4) the parties' income tax returns categorized the income as "non-passive." Nelson also opined that "the best measurement" for determining husband's income was an average of "the last six years . . . of income [from] Basement Partners and the

real estate development companies," and Nelson reported that this six-year average was $36,000 per month.

¶ 50 In challenging the court's determination and its reliance on Nelson's opinion, husband highlights that his expert witness disagreed with Nelson. He notes that his expert opined that husband was a passive investor and that the distributions from the development companies should be split between husband and wife because they jointly invested in the companies. However, the court weighed the experts' differing opinions, and it was persuaded that the most credible amount for husband's income was $36,000 per month. We may not disturb its resolution of the conflicting evidence. *See Thorburn*, ¶ 49; *Evans*, ¶ 45; *see also Bookout*, 833 P.2d at 804 ("The weight to be accorded to the valuation techniques of an expert is for the [district] court's determination . . . .").

¶ 51 Nor do we agree with husband that the court abused its discretion by using a six-year average of his income. Even husband's expert agreed that it was appropriate to use a six-year average because it aligned with the "lifetime" of the real estate development projects. *See Capparelli*, ¶ 32. We therefore will not disturb the court's income finding.

## D. Wife's Income

¶ 52    Husband next contends that the court reversibly erred by determining that wife's gross income was $11,000 per month because it failed to include the earnings from the investment accounts allocated to her. We see no basis to reverse.

¶ 53    To be sure, a party's gross income may include dividends, interest, and capital gains. § 14-10-114(8)(c)(I)(F), (K), (N); *In re Marriage of Schaefer*, 2022 COA 112, ¶ 15. But it is the parties' duty to present the court with the requisite data, and their failure to do so doesn't provide them with grounds for reversal. *See Rodrick*, 176 P.3d at 815.

¶ 54    Nelson's report noted that, historically, the parties received interest, dividends, and capital gains from their investment accounts and that, in 2022, these earnings totaled over $236,000. Beyond that report, the evidence on the parties' investment earnings was sparse, and neither party presented evidence on their investment earnings in 2023 or 2024. Given the limited evidence on the parties' present earnings from their investment accounts, we are not persuaded that the court abused its discretion by not

including interest, dividends, and capital gains in its determination of wife's gross income.  *See id.*

¶ 55   In any event, husband received an approximately equal share of the investment accounts, and the court, likewise, omitted investment earnings from its determination of his gross income. And husband doesn't explain why any absence of investment earnings in its determination of wife's gross income (that were equally absent from husband's gross income) "substantially influenced the outcome of the case."  *In re Parental Responsibilities Concerning E.E.L-T.*, 2024 COA 12, ¶ 30.

¶ 56   We therefore will not disturb the court's finding on wife's gross income.

### E.    Life Insurance as Security

¶ 57   For her part, wife contends that the district court erred by not requiring that husband maintain a life insurance policy to secure his maintenance obligation.  We disagree.

¶ 58   The district court may, in its discretion, order a party to provide reasonable security for the payment of maintenance, which may include directing a party to obtain life insurance.  § 14-10-114(6)(a)-(b); § 14-10-118(2), C.R.S. 2025; *Evans,* ¶ 68.

¶ 59     While wife generally asked the court to order husband to maintain life insurance as security for his maintenance obligation, she did little to develop a factual basis showing a need for such security or the availability or rates of it. *See* § 14-10-114(6)(b)(I)-(VI) (enumerating the factors the court must consider when entering an order for life insurance). Moreover, the court found, with record support, that the parties were about the same age and neither party was in poor health. *See* § 14-10-114(6)(b)(I).

¶ 60     Given the limited evidence, the court reasonably determined, albeit implicitly, that wife didn't establish a valid basis to order that husband maintain a life insurance policy to secure his maintenance obligation. *See S.Z.S.,* ¶ 21; *Rodrick,* 176 P.3d at 815.

## IV.     Attorney Fees and Costs in the District Court

¶ 61     We next reject husband's contention that the district court erred by denying his request to equalize the parties' attorney fees and costs under section 14-10-119.

¶ 62     Section 14-10-119 empowers the district court to equitably apportion attorney fees and costs between the parties based on their relative ability to pay. *In re Marriage of Gutfreund,* 148 P.3d 136, 141 (Colo. 2006); *see also In re Marriage of Burford,* 26 P.3d

550, 559 (Colo. App. 2001) (explaining that the court may apportion attorney fees and costs under section 14-10-119 but not through its property division). We will not disturb the court's denial of a request for attorney fees and costs absent a showing that the court abused its discretion. *In re Marriage of Aragon*, 2019 COA 76, ¶ 8.

¶ 63    Husband argued that wife spent over $276,000 on attorney fees and expert witnesses. He argued that her spending was excessive, and that, given that he spent only $41,000 on his own attorney fees and costs, the court should equalize their litigation expenses. The court denied his request.

¶ 64    Husband focused on the difference in the amount of their attorney fees and costs, but he didn't establish that a disparity in their financial circumstances warranted equalizing the litigation expenses. The purpose of section 14-10-119 is to ensure that neither party suffers undue economic hardship due to the divorce proceedings. *In re Marriage of Aldrich*, 945 P.2d 1370, 1377-78 (Colo. 1997). The parties had significant financial resources, each party used those resources to pay their own litigation expenses, and husband acknowledges that "the parties were on equal footing financially throughout the litigation." The mere fact that wife spent

more than husband did not establish a proper basis to equalize their attorney fees and costs. *See id.*

¶ 65　Moreover, the court found, with record support, that wife's attorney fees and costs were not unreasonable under the circumstances. It explained that the case presented "complex" financial issues, husband's business ventures contributed to that complexity, and wife had "much at stake" in this litigation.

¶ 66　To the extent that husband suggests the court, in fact, improperly awarded wife attorney fees and costs under section 14-10-119, the record does not reveal that the court entered such an order. And husband fails to explain how the court's denial of his request to offset the attorney fees and costs meant that it awarded attorney fees and costs to wife. *See S.Z.S.,* ¶ 29.

¶ 67　The court therefore did not abuse its discretion by denying husband's request to equalize attorney fees and costs.

### V.　Attorney Fees and Costs on Appeal

¶ 68　Husband and wife both request an award of appellate attorney fees and costs based on the purported disparity in their present financial circumstances. *See* § 14-10-119. The district court is better equipped to address the factual issues associated with these

requests, and we therefore remand this issue to the district court. *See* C.A.R. 39.1; *Collins*, ¶ 86.

¶ 69 Wife also alleges that husband's appeal lacked substantial justification and requests attorney fees on that basis. We deny that request. *See Glover v. Serratoga Falls LLC*, 2021 CO 77, ¶ 70 (noting that awards of appellate attorney fees for frivolous appeals should be reserved for clear and unequivocal cases involving egregious conduct).

## VI.   Disposition

¶ 70 We affirm the judgment and remand the case to the district court to address the parties' requests for appellate attorney fees under section 14-10-119.

JUDGE PAWAR and JUDGE JOHNSON concur.