**In re the MARRIAGE OF John Patrick RODRICK, Appellant and Cross–Appellee,**

**and**

**Kathleen Rene Rodrick, Appellee and Cross–Appellant.**

No. 06CA0306.

Colorado Court of Appeals, Div. III.

June 28, 2007.

Rehearing Denied July 26, 2007.

Certiorari Denied Feb. 4, 2008.

Helm, Less, Smith & Williams, L.L.P., Phillip A. Less, Arvada, Colorado, for Appellant and Cross–Appellee.

Diana Blair, Denver, Colorado, for Appellee and Cross–Appellant.

Opinion by Judge BERNARD.

John Patrick Rodrick (husband) appeals the trial court's judgment on parental responsibilities, child support, and the division of marital property in this dissolution of marriage proceeding. Kathleen Rene Rodrick (wife) cross-appeals rulings relating to child support, property division, and attorney fees. We affirm the trial court's judgment and remand for further proceedings regarding child support and wife's request for attorney fees.

## I.  Child Support

The principal issue in this appeal is whether the trial court properly entered judgment requiring husband to pay child support for another couple's child for whom husband and wife had been awarded parental responsibility. We conclude the judgment was proper, but its terms must be clarified on remand.

### A.  Background

Husband and wife were married in 1996. In 1999, they accepted a friend's offer to raise the friend's child, J.S. They took J.S. into their home the day after he was born.

The biological parents signed a document entitled, "Power of Attorney Delegating Parental Authority Pursuant to C.R.S. § 15–14–104," when they gave J.S. to husband and wife. The power of attorney stated the biological parents appointed husband and wife as attorneys in fact "for the purpose of providing a home and parental authority and guidance of the child." It also stated the biological parents delegated all their parental powers, including the right to educate J.S. and to provide him with medical care, to husband and wife.

In 2001, husband and wife filed a document entitled, "Verified Petition for Parental Responsibility for a Child," with the court, which they both signed under oath, requesting they be granted parental responsibility for J.S. The verified petition indicated the power of attorney had expired. The verified petition also stated the biological parents had not seen J.S. or provided financial support for him; husband and wife wanted "to establish a legal basis for continuing to care for" J.S.; husband and wife wished to care for J.S. and were "fit and proper persons to be granted legal care, custody and control" of him; and it was in J.S.'s best interests for husband and wife to be granted "joint legal custody/parental responsibility" for him. The petition referred to § 14–10–123, C.R.S. 2006, as the basis for granting the order.

In response to this petition, a district court magistrate entered an order entitled, "Order of Permanent Parental Responsibility." The parental responsibility order stated it was in J.S.'s best interests for husband and wife to be awarded permanent parental responsibility; the biological parents had a duty of support with respect to J.S.; and the magistrate reserved ruling on setting a child support amount for the biological parents and on whether the biological parents would be entitled to parenting time, should they request it.

The parental responsibility order was designed to be a step toward husband and wife's adopting J.S. Their attorney wrote them a letter stating they could adopt J.S. "once [they] have had custody of him for one year." In January 2003, the attorney sent husband and wife a series of documents to effect the adoption, including one entitled, "Petition for Custodial Adoption." The accompanying affidavit included statements that husband and wife had been granted legal custody or guardianship of J.S.; the biological parents had not provided reasonable support for J.S. for a year or more; the biological parents had abandoned the child for a year or more; and husband and wife had J.S. in their physical custody for a year or more.

These adoption documents were never filed. Husband separated from wife in April 2003. His attorney advised him to stop the

adoption proceedings because the marriage was failing. Husband filed a petition for dissolution of marriage shortly after the separation, in which he stated he and wife had "legal guardianship" of J.S. Wife's response to the petition also read that wife and husband were J.S.'s legal guardians.

Husband's financial affidavit indicated he had been providing J.S. with financial support, including paying for groceries, child care, and medical bills.

Husband testified at the 2004 dissolution hearing. He said he wanted parenting time with J.S. He stated they were close, and they studied, worked, played, and exercised together. They were affectionate, possessed of "an incredible rapport," and loved each other "very much." Husband characterized J.S. as a good and happy boy. He referred to J.S. as his "son" and to himself as J.S.'s "father."

In the course of the hearing, husband and wife requested the court to change J.S.'s last name to "Rodrick."

Husband contended before the trial court that J.S. was a ward and husband and wife were his guardians. Therefore, husband argued, neither he nor wife had a duty to pay child support under § 14–10–115, C.R.S.2006, as that statute only requires support for natural or adopted children of a marriage. Husband cited § 15–14–209(2), C.R.S.2006, in support of his argument, which reads that "[a] guardian need not use the guardian's personal funds for the ward's expenses."

Thus, it was husband's position the trial court did not have jurisdiction to enter a child support order under § 14–10–115. In lieu of such an order, husband asked the trial court to enter an order encouraging husband and wife to work together to resolve financial issues for J.S., and that the "guardianship order" could subsequently be modified if husband and wife could not agree.

The trial court found husband and wife had assumed a duty to support J.S. Relying on *In re Marriage of Bonifas*, 879 P.2d 478 (Colo. App.1994), the trial court concluded husband and wife had a contractual duty to support the child and the support guidelines in § 14–10–115 provided the appropriate basis for determining what the level of support should

be. The court ordered husband to pay wife $326 per month until husband began to exercise one-half of the parenting time, which would occur when his driving privileges, suspended due to alcohol-related driving offenses, were restored. Then, husband and wife would each be responsible for one-half of the cost of J.S.'s support.

On appeal, husband continues to argue J.S. was a ward and husband and wife were his guardians. Thus, husband contends the trial court erred by finding that husband and wife owed a legal duty to support J.S. and improperly relied upon *In re Marriage of Bonifas, supra*, to establish a duty of support and award wife child support under § 14–10–115.

■ An appellate court may affirm a trial court's correct judgment based on different reasoning than the trial court used. *See Steamboat Springs Rental & Leasing, Inc. v. City & County of Denver*, 15 P.3d 785, 786 (Colo.App.2000). Here, we conclude the trial court's judgment was correct, but conclude husband and wife have a statutory duty to support J.S. Thus, we affirm the trial court's judgment on different grounds.

### B. Statutory Duty

The power of attorney referred to the predecessor of § 15–14–105, C.R.S.2006, which then read:

> A parent or a guardian of a minor . . . by a properly executed power of attorney, may delegate to another person, for a period not exceeding nine months, any of his powers regarding care [or] custody . . . of the minor child or ward, except his power to consent to marriage or adoption. . . .

Colo. Sess. Laws 1973, ch. 451, § 153–5–104 at 1613 (later codified at § 15–14–104). This statute is part of the legislative scheme, § 15–14–101, et seq., C.R.S.2006, establishing procedures for the creation of guardianships for minors and incapacitated persons.

Here, the power of attorney lapsed nine months after it was executed by operation of the statute upon which it was based. Husband and wife expressly recognized it had expired in 2001 in the verified petition, when they asked the magistrate to "establish a

legal basis" for them to continue to care for J.S.

The "legal basis" they requested was a parental responsibility order. In response to their request, the magistrate entered the parental responsibility order.

■ The parental responsibility order was not a guardianship order and did not create a ward-guardian relationship between J.S. and husband and wife. Rather, as acknowledged by husband, the parental responsibility order was a prelude to adopting J.S., and, as such, it had legal significance established by statute.

Section 19–5–203, C.R.S.2006, sets forth different circumstances in which a child may be adopted. One of these occurs when a legal custodian in a custodial adoption submits an affidavit indicating the child's birth parents have abandoned the child for a year or more, or failed without cause to support the child for a year or more, and the legal custodian has had the child in his or her custody for a year or more. Section 19–5–203(1)(k), C.R.S.2006. Here, a proposed affidavit following the requirements of this statute was mailed to husband and wife by their attorney, although it was never signed or filed with a court.

The term "custodian" is defined by § 19–1–103(35), C.R.S.2006, to be "a person who has been providing shelter, food, clothing, and other care for a child in the same fashion as a parent would, whether or not by order of court." The phrase "legal custody" means "the right to the care, custody, and control of a child and the duty to provide food, clothing, shelter, ordinary medical care, education, and discipline for a child and, in an emergency, to authorize surgery or other extraordinary care." Section 19–1–103(73)(a), C.R.S.2006. A "custodial adoption" is

an adoption of a child by any person and such person's spouse . . . who:

(a) [h]as been awarded custody or allocated parental responsibilities by a court of law in a . . . custody or allocation of parental responsibilities proceeding . . . and

(b) [h]as had physical custody of the child for a period of one year or more.

Section 19–1–103(34.7), C.R.S.2006.

■ It was husband and wife's plan to seek a custodial adoption of J.S. under § 19–5–203(1)(k). To satisfy this statute, they had to be the "legal custodians" for J.S. for at least a year. By obtaining the order of permanent parental responsibility, husband and wife became legal custodians, meaning, (1) under § 19–1–103(35), they were custodians providing J.S. with "shelter, food, clothing, and other care . . . in the same fashion as a parent would," and (2) they had legal custody of J.S. under § 19–1–103(73)(a), which provided them with the right to the "care, custody, and control" of J.S., and with the duty "to provide food, clothing, shelter, ordinary medical care, education, and discipline" to J.S. Husband and wife satisfied the conditions for custodial adoption and, thus, were eligible to adopt J.S. *See In re Custody of C.C.R.S.*, 892 P.2d 246, 251–54 (Colo.1995); *In Interest of K.M.B.*, 80 P.3d 914, 916–17 (Colo.App.2003).

Under § 14–10–123(1), C.R.S.2006, a proceeding to establish parental responsibilities is commenced in the district court:

(b) [b]y a person other than a parent, by filing a petition seeking the allocation of parental responsibilities for the child in the county where the child is permanently resident . . . but only if the child is not in the physical care of one of the child's parents;

(c) [b]y a person other than a parent who has had the physical care of a child for a period of six months or more . . . or

(d) [b]y . . . a person other than a parent who has been granted custody of a child. . . .

Here, the verified petition was, by its express terms, a request for an order granting husband and wife parental responsibilities under § 14–10–123. The magistrate had authority to enter such an order because husband and wife satisfied all three of the alternative requirements contained in § 14–10–123(1)(b), (d). The parental responsibility order granted husband and wife parental responsibilities.

812

When the legislature adopted the phrase "parental responsibilities" effective February 1, 1999, it was careful to make clear "the term 'custody' and related terms such as 'custodial' and 'custodian' have been changed to 'parental responsibilities.'" Section 14–10–103(4), C.R.S.2006. Thus, the parental responsibility order granted husband and wife custody of J.S.

The issue of whether a legal custody order obligated a custodian to provide child support because of the definition of custody contained in § 19–1–103(73)(a) was raised in *People in Interest of P.D.*, 41 Colo.App. 109, 580 P.2d 836 (1978). There, a child was adjudicated dependent and neglected, and custody of the child was given to a husband and his wife. The two divorced before adoption proceedings had begun. The court awarded custody of the child to the wife and ordered the husband to pay child support.

Conceding he had been the child's legal custodian, the husband asked the trial court to terminate his legal custody of the child. The man argued he merely stood in loco parentis, and his obligations could be removed from him at any time, including any obligation he had to provide support.

A division of this court agreed, holding:

[L]egal custody of a child, with its attendant duties, may not be imposed upon an unwilling person who is not the child's parent. Here, absent the dependency or neglect order vesting legal custody in the [husband], he would have no legal obligation to care for or to support [the child].

*People in Interest of P.D., supra*, 41 Colo. App. at 113, 580 P.2d at 838. However, the division concluded, "[w]hile the [husband] voluntarily accepted the legal custody of [the child] after she was declared dependent or neglected, he did not undertake a permanent obligation." *People in Interest of P.D., supra*, 41 Colo.App. at 113, 580 P.2d at 838.

This case is distinguishable from *People in Interest of P.D., supra*. Husband did not ask the court to relieve him of custody or terminate his relationship with J.S.; rather, husband wanted parenting time and parental decision-making responsibility. More important, husband and wife intended to undertake a permanent obligation, because the parental responsibility order they sought was, by its express terms, permanent, remaining in effect unless modified by a subsequent court order.

Awards of child support in dissolution of marriage proceedings are governed by § 14–10–115. Section 14–10–115(1), C.R.S.2006, provides a court with authority to "order either or both parents owing a duty of support to a child of the marriage to pay an amount reasonable or necessary for the child's support." However, § 14–10–115(17), C.R.S.2006, adds:

This section shall apply to all child support obligations, established or modified, as part of any proceeding, including, but not limited to, articles 5, 6, and 10 of this title and articles 4 and 6 of title 19, C.R.S., regardless of when filed.

■ The parental responsibility order was entered under § 14–10–123, which is part of article 10 of title 14. It established a child support obligation by imposing the duties on husband and wife, described in § 19–1–103(73)(a), to provide J.S. with the necessities of life. Therefore, the trial court had the authority, under § 14–10–115(1) and (17), to order husband to pay child support. *See Lipscomb v. Lipscomb*, 660 So.2d 986, 988 (Ala.1994) (although blood kinship and in loco parentis relationship did not create a duty of support, grandfather had "a legal duty to support that arises from the legal custody of the child that he sought and obtained").

■ Husband relies on the paragraph in the parental responsibility order stating the biological parents "have a duty of support with respect to" J.S., and reserving any ruling on "a specific child support amount" as a basis for his contention he does not owe J.S. a duty of support. *See also* § 19–1–103(93), C.R.S.2006 (a parent retains "residual parental rights and responsibilities" after legal custody has been vested in another person, including "the responsibility for support"). However, this language does not support husband's argument.

The phrase does not eliminate the duties husband and wife assumed by virtue of the parental responsibility order. The parental

responsibility order also recognized the biological parents had not provided J.S. with financial support since he had been born, indicating the magistrate's recognition that husband and wife had been supporting J.S.

Moreover, the language in the parental responsibility order is not exclusive in its reference to the duty of the biological parents, because it refers to "a duty," not "the duty." *See Brooks v. Zabka*, 168 Colo. 265, 269, 450 P.2d 653, 655 (1969) ("It is a rule of law well established that the definite article 'the' particularizes the subject which it precedes. It is a word of limitation, as opposed to the indefinite or generalizing force of 'a' or 'an.'"). Thus, the parental responsibility order contemplated others could have a duty to support J.S. By the terms of the parental responsibility order, husband and wife were included in that group.

Here, husband and wife have a duty to support J.S. because of the terms of the parental responsibility order and the duties the parental responsibility order imposed upon them. Accordingly, we affirm the trial court's order requiring husband to pay child support, albeit on grounds different from those relied upon by the trial court. *See Steamboat Springs Rental & Leasing, Inc. v. City & County of Denver, supra*, 15 P.3d at 786 (appellate court may affirm a correct judgment based on reasoning different from that employed by trial court).

### C. Conclusion

We conclude husband and wife owe J.S. a duty of support and affirm the trial court's order requiring husband to pay child support for J.S. However, because the trial court did not specify a starting date or a monthly due date for the child support payment, we remand this case to the trial court to enter such orders.

The trial court ordered husband to pay monthly child support until he recovered his driving privileges, when the child support order would terminate, J.S. would stay with husband and wife on an equal basis, and husband and wife would be responsible for providing J.S. with support while he lived with each of them. Because of the passage of time between the date of the trial court's order and the resolution of this appeal, the trial court's order terminating husband's $326 monthly payment once husband and wife each begin exercising approximately one-half parenting time may presently be in effect. If so, the trial court shall determine what arrearages husband may owe, if any, under the $326 per month order and issue appropriate orders for payment and collection of these arrearages.

### II. Decision–Making Responsibility

Husband contends the trial court erred and abused its discretion in awarding sole decision-making responsibility to wife. Husband argues the court erred in failing to consider the statutory criteria for determining the allocation of decision-making responsibilities and choosing instead to grant sole decision-making responsibility to wife because of husband's history of alcohol abuse. He maintains his past alcohol use and its impact on the child would have been addressed in a report to be prepared by a special advocate. He submits it was an abuse of the court's discretion to deny the continuance needed to allow time for the report to be completed and then for the court to consider his alcohol use without the benefit of an evaluation. We are not persuaded.

■ Under § 14–10–124(1.5)(b), C.R.S. 2006, the court must consider all of the factors set forth in that subsection and in § 14–10–124(1.5)(a), C.R.S.2006, in determining the best interests of the child for the purpose of allocating decision-making responsibilities. Among these factors is "the ability of the parties to cooperate and to make decisions jointly." Section 14–10–124(1.5)(b)(I), C.R.S. 2006. Specific findings concerning each factor need not be made, but the findings must be sufficient to allow the reviewing court to determine whether the decision is supported by competent evidence. *In re Marriage of England*, 997 P.2d 1288, 1290 (Colo.App. 1999).

■ Here, wife testified that when husband drank, he got angry and would not discuss decisions with her, but he also became angry if she made decisions herself. Wife also testified she believed husband was

still drinking. The trial court found both parties should have input into major decisions for the child, but wife should have sole decision-making responsibility in the event the parties were unable to agree on any decision. The court concluded this arrangement was in the child's best interests because of husband's history of alcohol abuse.

We are satisfied the court's findings are sufficient to show the court considered the statutory criteria. The ability of the parties to cooperate and make decisions jointly is one of those criteria, and we decline to assume the court's reliance on this factor is an indication the court failed to consider the other factors. We are also satisfied the court's ruling is supported by competent evidence.

Finally, we reject husband's argument that the court abused its discretion in declining to grant a continuance so the special advocate could complete his report. The grant or denial of a continuance is a matter entrusted to the sound discretion of the trial court, and the trial court's decision will not be disturbed on review absent a clear abuse of that discretion. *In re Marriage of Dion,* 970 P.2d 968, 970 (Colo.App.1997). Here, husband has not shown the special advocate's investigation would have revealed information about his use or abuse of alcohol that could not have been presented through his own testimony or cross-examination of wife. Accordingly, we find no abuse of discretion in denying the request for a continuance.

## III. Property

### A. Marital Share of Equity

Husband contends the trial court miscalculated the marital share of the increase in equity in the home purchased by him prior to the marriage. We disagree.

Before dividing marital property, the court must first set aside to each spouse his or her separate property, and then divide the marital property after considering all relevant factors, including the contributions of each spouse to the acquisition of the marital property. Section 14–10–113(1), C.R.S.2006.

Here, the trial court considered all relevant factors, including the premarriage purchase price; the amount husband contributed to the down payment from his separate funds; the original amount of the mortgage; the increase in value of the residence during the marriage; and the value of the equity and the amount of the mortgage at the time of the dissolution hearing.

We perceive no error here. Husband's suggestion that the court failed to take his separate contribution into account is incorrect and contrary to the express language of the court's order.

### B. Interest

On cross-appeal, wife contends the trial court erred by not specifying a date on which interest would begin to accrue on the promissory note to be executed by husband in her favor. The court found wife's share of the marital value of the home was $27,500, and ordered husband to "execute a promissory note and trust deed in that amount payable within 180 days from the date hereof with interest at the legal rate." We infer the court intended husband to pay postjudgment interest on this portion of the marital property award. Postjudgment interest begins to accrue on the date judgment is entered, or, in this case, on October 13, 2005. Section 5–12–102(4), C.R.S.2006. Thus, we conclude the court specified the date on which interest was to begin to accrue.

We are not persuaded otherwise by wife's suggestion that, under § 14–10–113(5), C.R.S.2006, interest should have begun to accrue on November 22, 2004, the date on which the permanent orders hearing concluded and the decree of dissolution was entered. Section 14–10–113(5) provides property shall be valued as of the date of the decree or as of the date of the hearing on disposition of property if such hearing precedes the date of the decree. It does not make any provision regarding the date on which interest should begin to accrue on any sum ordered to be paid as part of the division of marital property.

### C. Florida Properties

Wife also contends that the trial court abused its discretion in failing to divide

as marital property any increase in value of husband's Florida properties. We do not agree.

If property is omitted from permanent orders without explanation, the property division cannot stand. *In re Marriage of Foottit,* 903 P.2d 1209, 1213 (Colo.App.1995). However, if the court has no evidence before it of the classification or value of an asset, it does not err in omitting it from the property division. *In re Marriage of Page,* 70 P.3d 579, 582 (Colo.App.2003).

Here, husband provided the court with evidence regarding the nature of his interest in the Florida property and the value of the property in his 2003 and 2004 financial affidavits and in his testimony at trial. The evidence showed that, in 1991, husband acquired title to two lots, one titled in his name and one titled jointly in his name and his brother's name; he acquired the property by gift or inheritance; he believed it was worth $10,000 and its value had not increased during the marriage; and he relinquished his interest in the property to his brother in 1995.

Wife presented no evidence regarding the nature of husband's interest in the property or its value. She contended that, because she had not received copies of the deeds to the property until shortly before the hearing, it had not been possible for her to obtain appraisals of the property. She suggested the court order an appraisal be done, after which the increase in the value of the property could be divided between the parties.

The court chose instead to rely on husband's evidence, and concluded on the basis of such evidence that all interest in the properties should be awarded to husband as his separate property.

It is the parties' duty to present the trial court with the data needed to allow it to value the marital property, and any failure by the parties in that regard does not provide them with grounds for review. *In re Marriage of Zappanti,* 80 P.3d 889, 892 (Colo.App.2003).

Here, wife did not present the trial court with evidence supporting her claim that there had been an increase in the value of the Florida properties and the increase constituted marital property. The trial court was not persuaded by her argument that husband's failure to produce copies of the deeds to the property in a timely manner had prevented her from obtaining the necessary evidence. Based upon these circumstances, we conclude the trial court did not abuse its discretion in relying on husband's evidence. We are also not persuaded the trial court abused its discretion in concluding the Florida properties had not appreciated in value during the marriage based on that evidence, and, thus, had no marital value.

## IV. Attorney Fees

Wife contends that the trial court abused its discretion in failing to order husband to pay some or all of her attorney fees. We reject wife's contention that the court abused its discretion in denying attorney fees under § 14–10–119, C.R.S.2006, and conclude further findings are necessary with respect to wife's request for an award of attorney fees under § 13–17–102, C.R.S.2006.

Section 13–17–102(4), C.R.S.2006, provides that the court shall assess attorney fees if, upon motion of any party or the court itself, it finds an attorney or party brought or defended an action, or any part thereof, lacking substantial justification. "Lack[ing] substantial justification" means substantially frivolous, substantially groundless, or substantially vexatious.

Section 14–10–119 provides that, after considering the financial resources of both parties, the court may order a party to a dissolution action to pay a reasonable amount for attorney fees incurred by the other party. Section 14–10–119 permits the court to apportion attorney fees and costs based upon the relative economic circumstances of the parties in order to equalize their status and to ensure that neither party suffers undue economic hardship as a result of the proceedings. *In re Marriage of Aldrich,* 945 P.2d 1370, 1377 (Colo.1997).

The trial court has broad discretion in awarding attorney fees under § 14–10–119, and absent an abuse of such discre-

tion, the court's award will not be disturbed on appeal. *In re Marriage of Lishnevsky,* 981 P.2d 609, 612 (Colo.App.1999). It is also within the court's discretion to determine whether attorney fees should be awarded under § 13–17–102, and the court's order will not be disturbed on review if it is supported by the evidence. *In re Marriage of Aldrich, supra,* 945 P.2d at 1377 ("Because dissolution proceedings under article 10, title 14 are civil, it is permissible for a district court to award attorney fees under section 14–10–119, section 13–17–102, or both.").

Here, both parties were unemployed at times during the marriage. At trial, husband testified he was unemployed and, when employed, he made an average of $12 per hour. Wife testified she recently became employed, and she was making $12 per hour.

The court determined there was $55,000 in marital equity in the family home, and ordered husband to execute a promissory note to wife for half that amount. Husband retained an investment fund worth approximately $46,000 he had acquired by inheritance.

The court also ordered each party to pay part of the substantial marital debts. Husband was ordered to assume the responsibility for debts totaling more than $15,000, while wife was assigned debts totaling more than $11,000.

The court then determined, based upon the financial circumstances of the parties, each should be responsible for his or her individual attorney fees under § 14–10–119. The court did not address wife's request for an award of attorney fees under § 13–17–102.

We are not persuaded the trial court abused its discretion in declining to order husband to pay a portion of wife's attorney fees under § 14–10–119 in the circumstances present here. However, because the court did not address wife's request for an award of attorney fees under § 13–17–102, we are unable to determine whether the court abused its discretion by not awarding attorney fees under that statute. Accordingly, on

remand, the court should address this request.

The permanent orders are affirmed, and the case is remanded for further proceedings with respect to child support and wife's request for attorney fees under § 13–17–102.

RUSSEL and STERNBERG *, JJ., concur.