Alan SIDMAN and Sheryl Sidman,
Plaintiffs–Appellees,

v.

Michael SIDMAN and Renee Sidman,
Defendants–Appellants.

No. 08CA2454.

Colorado Court of Appeals,
Div. II.

Oct. 29, 2009.

§ 24–51–1105, C.R.S.2009.

Beltz & West, PC, Daniel A. West, Colorado Springs, Colorado, for Plaintiffs–Appellees.

Leo L. Finkelstein, Colorado Springs, Colorado, for Defendants–Appellants.

Opinion by Justice ROVIRA.[*]

Michael Sidman and Renee Sidman, the guardians and aunt and uncle of minor child, D.I.S., appeal from the district court's order considering the guardians' income in the determination of child support to be paid by Alan Sidman and Sheryl Sidman, D.I.S.'s parents, and requiring the guardians to travel with the child to Massachusetts at their own expense to allow for parenting time with the parents. They assert (1) that their income should not have been included in the determination of child support to be paid by the parents; (2) that their capital gains should not have been included in the court's determination of child support; (3) that the court erred when it concluded it could not increase support above the top amount set in the guidelines based on the parties' combined gross incomes; and (4) that the court erred when it ordered them to travel with D.I.S. to Massachusetts at their own expense in order to allow for parenting time. Because we conclude the court erred in considering the guardians' income in the child support determination and in ordering them to travel at their own expense, we reverse and remand.

## I. Background

In 2002, the aunt and uncle were appointed permanent guardians of D.I.S. In 2006, the parents moved to terminate the guardianship. In 2007, the district court denied the motion. The parents appealed, and a division of this court affirmed. *In re D.I.S.,* (Colo.App. No. 07CA1971, Apr. 23, 2009) (not published pursuant to C.A.R. 35(f)).

Following the district court's ruling concerning guardianship of D.I.S., the guardians moved to establish child support. In a pretrial order, the court ruled that the statutes pertaining to guardianships allowed the guardians to apply for child support, and at the support hearing the court would follow the standards set out in section 14–10–115, C.R.S.2009, for determination of support.

At trial, the guardians argued that their income should not be considered in the court's calculation of support owed by the parents. The guardians further argued that if their income were to be included, their 2005–2007 capital gains should be excluded because they were from sales of investments made to pay for their own children's college educations.

At trial, the parents argued that their only duty of support was to reimburse the guardians for out-of-pocket expenses pursuant to the guardianship statutes. The district court held that pursuant to section 14–10–115, it was required to consider the income of both the parents and the guardians in determining the amount of child support due from the parents. Without the inclusion of the guardians' income in the child support determination, the parents would have had a monthly duty of support of $1,380.80 based on their combined monthly gross income of $12,585. With the inclusion of the guardians' income however, the parents' monthly duty of support was $371.

The court rejected the guardians' arguments that sections 15–14–207 and 15–14–209, C.R.S.2009, applied to the determination of child support. The district court also ordered that the guardians would be responsible for taking D.I.S. to Massachusetts for court-ordered visits with his parents, at the guardians' expense.

## II. Child Support Determination

The guardians first contend that the district court erred by considering their income in the determination of child support to be paid by the parents. We agree.

§ 24–51–1105, C.R.S.2009.

---

[*] Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

## A. Law

■ Whether a court has applied the correct legal standard to a case is a matter of law. *Freedom Colo. Info. Inc. v. El Paso County Sheriff's Dep't*, 196 P.3d 892, 897 (Colo.2008). We review de novo whether the trial court applied the correct legal standard in making its findings. *People in Interest of J.R.T.*, 55 P.3d 217, 219 (Colo.App.2002), *aff'd sub nom. People v. Martinez*, 70 P.3d 474 (Colo.2003).

■ In interpreting a statute, we must determine and effectuate the intent of the General Assembly. *Davison v. Indus. Claim Appeals Office*, 84 P.3d 1023, 1029 (Colo. 2004). We strive to construe a statute as a whole, giving consistent, harmonious, and sensible effect to all of its parts; we will not adopt an interpretation that leads to illogical or absurd results. *Colo. Water Conservation Bd. v. Upper Gunnison River Water Conservancy Dist.*, 109 P.3d 585, 593 (Colo.2005); *Frazier v. People*, 90 P.3d 807, 811 (Colo. 2004). If the plain language of the statute is clear and unambiguous, we interpret the statute according to its plain meaning. *Davison*, 84 P.3d at 1029.

Section 14–10–115 (1)(a), C.R.S.2009, states, "The child support guidelines and schedule of basic child support obligations have the following purposes: (I)[t]o establish as state policy an adequate standard of support for children, subject to the ability of parents to pay...." Section 14–10–115(1)(b), C.R.S.2009, provides, "The child support guidelines and schedule of basic child support obligations do the following: (I) [c]alculate child support based upon the parents' combined adjusted gross income...."

In *In re Marriage of Conradson*, 43 Colo. App. 432, 434, 604 P.2d 701, 703 (1979), a division of this court concluded that the factors to be considered in making a support award under section 14–10–115 *do not include* the financial resources of a nonparent with whom the child is living.

■ In addition, section 15–14–209(2), C.R.S.2009, states, "A guardian need not use the guardian's personal funds for the ward's expenses." In *In re J.C.T.*, 176 P.3d 726, 730 (Colo.2007), the supreme court stated, "Gen-erally probate courts establish guardianships for the purpose of protecting and caring for those in society who cannot fend for themselves...." A guardian is "responsible for the ward's physical well-being," including the provision of "shelter, food, clothing, medical care or other necessities of life." *Id.* (quoting Peter Mosanyi, Comment, *A Survey of State Guardianship Statutes: One Concept, Many Applications*, 18 J. Am. Acad. Matrimonial Law. 253, 255 (2002)). A guardian "has essentially the same authority and responsibilities with regard to the child as a parent would have, with the exceptions that the guardian typically does not provide the financial resources to support the child and serves solely at the pleasure of the appointing court." *Id.*

## B. Application

■ Here, in determining child support, the district court concluded it should follow the standards set forth in section 14–10–115 and was required to consider the income of both the guardians and the parents.

The guardians argue that there is no provision in the child support statute allowing for the use of their income in determining the appropriate amount of child support to be paid by the parents.

We conclude that the plain language of section 14–10–115 states that only the parents' incomes can be included in the determination of the amount of child support. This conclusion is supported by section 15–14–209(2), which states, "A guardian need not use the guardian's personal funds for the ward's expenses."

We reject the parents' contention that the cases they cite compel a different result. Unlike *In re Marriage of Bonifas*, 879 P.2d 478 (Colo.App.1994), the guardians in this case have not held themselves out as D.I.S.'s de facto parents, but instead were designated his legal guardians under a court order. In *Bonifas*, a division of this court concluded that there was a duty of support, not based on the child support statute, but instead based on a contract assuming full financial responsibility for the child. Unlike in *Bonifas*, no contractual relationship providing for

a duty of support is established under the facts of this case.

Similarly, unlike *People in Interest of P.D.,* 41 Colo.App. 109, 580 P.2d 836 (1978), where the petitioner sought to end his obligation of support by terminating legal custody of a child, the guardians in this case do not seek to terminate guardianship; rather, they assert that under the guardianship statute they have no duty of support.

Finally, unlike *In re Marriage of Rodrick,* 176 P.3d 806 (Colo.App.2007), in this case no parental responsibility order was entered. In *Rodrick,* the division specifically distinguished the parental responsibility order from a guardianship by stating, "The parental responsibility order was not a guardianship order and did not create a ward-guardian relationship.... Rather ... the parental responsibility order was a prelude to [adoption] ... and, as such, it had legal significance established by statute." *Id.* at 811.

■ We agree with the guardians' contention that under section 14–10–115, a guardian's income should not be included in the determination of the amount of support to be paid. Section 14–10–115 does not mention a guardian's duty of support. Rather, it states that child support is to be determined based on the combined adjusted gross income of the parents. § 14–10–115(1)(b)(I).

### C.   Conclusion

According to the plain language of section 14–10–115, only the parents' incomes are to be included in the determination of child support. Consequently, we conclude that the district court did not apply the correct legal standard when it included the guardians' income in the child support determination.

### III.   Traveling with the Child at the Guardians' Own Expense

■ The guardians next contend that the district court erred by requiring them to travel with D.I.S. to Massachusetts at their own expense to allow parenting time with D.I.S.'s parents. We agree.

Section 14–10–115(11)(a)(II), C.R.S.2009, provides that any expenses for transportation of the child "shall be divided between the parents in proportion to their adjusted gross income."

According to the plain language of section 14–10–115(11)(a)(II), travel expenses for a child shall be divided between the parents. Consequently, we conclude that the district court did not apply the correct legal standard when it ordered the guardians to travel with D.I.S. to Massachusetts, at their own expense.

### IV.   Other Issues

In light of our conclusion that the district court erred in considering the guardians' income in making the child support determination and in ordering them to travel at their own expense to allow for parenting time, we need not address the remaining issues.

The order is reversed, and the case is remanded for further proceedings consistent with this opinion.

Judge CASEBOLT and Judge KAPELKE concur.