The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader.  The summaries may not be cited or relied upon as they are not the official language of the division.  Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
March 21, 2019

## 2019COA43

**No. 17CA2105, *Parental Responsibilities Concerning A.C.H.* — Family Law — Parental Responsibilities — Psychological Parent — Child Support**

A division of the court of appeals considers whether a "psychological parent" — an unrelated person who has received parenting time and decision-making responsibility for a nonbiological child under section 14-10-123(1)(b), (c), C.R.S. 2018 — may also be ordered to pay child support to the biological parent of that child.  The division concludes that section 14-10-115, C.R.S. 2018, permits a district court to impose a child support obligation on a psychological parent when that person sought the legal right to the same parental responsibilities as a natural or adoptive parent, and was granted parental responsibilities under section 14-10-123.

Court of Appeals No. 17CA2105
El Paso County District Court No. 16DR30207
Honorable Eric Bentley, Judge

In re the Parental Responsibilities of A.C.H. and A.F., Children,

and Concerning Anastasia C. Magana,

Appellant,

and

Justin Lee Hill,

Appellee.

ORDER REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division V
Opinion by JUDGE RICHMAN
Román and Berger, JJ., concur

Announced March 21, 2019

The Kanthaka Group, John Scorsine, Colorado Springs, Colorado, for Appellant

No Appearance for Appellee

Sherman & Howard L.L.C., Jordan M. Fox, Denver, Colorado; Polidori, Franklin, Monahan, & Beattie L.L.C., Peter L. Franklin, Lakewood, Colorado, for Amicus Curiae the Colorado Chapter of the American Academy of Matrimonial Lawyers

¶ 1	Today, more and more children are a part of nontraditional families — they are raised by at least one person not biologically related to them, but who acts as a parent.  Commonly referred to as a psychological parent, an unrelated person who meets statutory criteria may seek an order for parenting time and decision-making responsibility under section 14-10-123(1)(b), (c), C.R.S. 2018.  *See In re Parental Responsibilities Concerning E.L.M.C.*, 100 P.3d 546, 559 (Colo. App. 2004) (A psychological parent is "someone other than a biological parent who develops a parent-child relationship with a child through day-to-day interaction, companionship, and caring for the child." (quoting *In re Marriage of Martin*, 42 P.3d 75, 77-78 (Colo. App. 2002))).  In fact, this "statutory grant of standing to a non-parent to seek legal custody of a child constitutes legislative recognition of the importance of 'psychological parenting' to the best interests of a child."  *In re Parental Responsibilities Concerning V.R.P.F.*, 939 P.2d 512, 514 (Colo. App. 1997).  Recognition as a psychological parent can occur through a contested proceeding, *see, e.g., In re Parental Responsibilities Concerning C.C.R.S.*, 892 P.2d 246 (Colo. 1995), or can be achieved

1

through agreement between the natural/adoptive and psychological parents.

¶ 2     But the statute addressing child support, section 14-10-115, C.R.S. 2018, does not define the term "parent," let alone mention a psychological parent.  So it comes as little surprise that we are now asked to decide whether a psychological parent, who fought for and obtained a parenting time and decision-making responsibility order for his ex-girlfriend's biological child, can also be ordered to pay child support on behalf of that child.  For the reasons discussed below, we answer this question "yes."  As a result, we reverse the order denying child support from a psychological parent and remand the case to the district court for additional proceedings.

## I.  Relevant Facts

¶ 3     In 2006, Anastasia C. Magana (mother) and Justin Lee Hill (Hill) became romantically involved and immediately moved in together.  At that time, mother had a three-month-old son, A.F., whose biological father had been absent since his birth.  In 2007, mother gave birth to A.C.H., a daughter fathered by Hill, and all of them lived together as a family until 2010 when the couple broke up.

¶ 4     Following their split, the parties agreed to and followed an equal parenting time schedule with both children.

¶ 5     In 2016, seeking permission to relocate to Texas, mother petitioned the district court for an allocation of parental responsibilities with respect only to A.C.H., the parties' biological child. Hill, asserting that he was A.F.'s psychological parent, separately filed his own case seeking an allocation of parental responsibilities for A.F., moved to consolidate the two petitions, and argued for parental responsibilities as to both children, including payment of child support (to him). The district court consolidated the two cases.

¶ 6     Hill opposed the children's relocation and sought to be named their primary residential parent. He expressed a commitment to provide the children with a stable, loving, and more permanent home in Colorado. At Hill's request, the district court appointed a parental responsibility evaluator (PRE), a licensed mental health professional, to investigate, report, and make recommendations on parenting time. The district court subsequently granted an unopposed motion for a supplemental PRE.

¶ 7     The parties eventually stipulated, and the PREs agreed, that Hill was A.F.'s psychological parent, that mother could relocate to Texas, that the children should not be separated, and that the district court should enter the same parental responsibilities order for both children.

¶ 8     After a three-day permanent orders hearing, the district court

- noted that neither party pursued a paternity finding under the Uniform Parentage Act, sections 19-4-101 to -130, C.R.S. 2018;

- determined that Hill was A.F.'s psychological parent under section 14-10-123;

- found that "the children [were] well bonded and attached to both parents";

- concluded that it was in the children's best interests for them to reside primarily with mother in Texas, but allocated substantial parenting time to Hill during school breaks and over the summer, with a total of 107 overnights; and

- further concluded that mother should have sole decision-making responsibility as to education and

extracurricular activities for the children, but the parties should share joint decision-making as to all other major decisions.

¶ 9 The court reserved the issue of child support and asked for supplemental briefing.

¶ 10 Later, in a separate, detailed, and thoughtfully written order, the district court surveyed the reported case law in Colorado and concluded that it could not impose a child support obligation on Hill for the benefit of his psychological child, A.F., absent a "legal parent-child relationship or some other narrowly defined exceptional circumstance that is not present here."

¶ 11 Mother appeals only that portion of the district court's judgment declining to award child support for A.F. Hill has not filed a brief or appeared in our court. However, we have invited and received an amicus brief supporting Hill's position filed by the Colorado Chapter of the American Academy of Matrimonial Lawyers.

## II. Discussion

¶ 12 Mother contends that as A.F.'s psychological parent, Hill is on equal footing with her as a biological parent. This, she suggests,

means that he also has the responsibility to pay child support for A.F. We agree only to the extent that a psychological parent status may, under the circumstances present here, trigger an obligation to provide support under section 14-10-115.[1]

¶ 13    The amicus brief correctly argues that there is no statutory provision expressly imposing financial obligations on a psychological parent. In relevant part, section 14-10-115(2)(a) provides that in a proceeding for child support the district court "may order either or both *parents* owing a duty of support to a child . . . to pay an amount reasonable or necessary for the child's support." (Emphasis added.) Section 14-10-115, however, does not define the term "parent."[2]

---

[1] We acknowledge that a psychological parent does not generally share equal footing with a biological parent. *See Troxel v. Granville*, 530 U.S. 57, 66 (2000) ("[T]he Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children.").

[2] Other statutes define "parent." *See* § 13-92-102(4), C.R.S. 2018 (The statutory provision creating the Office of the Respondent Parents' Counsel defines parent as "a natural parent of a child, . . . a parent by adoption, or a legal guardian."); § 15-14-102(9), C.R.S. 2018 (probate code defines parent as one whose parental rights have not been terminated); § 19-1-103(82)(a), C.R.S. 2018 (children's code defining parent as either a natural parent of a child or a parent by adoption); § 22-7-302(6), C.R.S. 2018 (The statute

¶ 14    The amicus brief also correctly argues that no reported decision by Colorado appellate courts expressly concludes that child support must be paid to a biological parent by a psychological parent.  But no reported decision addresses whether a "psychological parent" comes within the statutory term "parent" as applied in section 14-10-115.

¶ 15    Though neither the statute nor any reported decision expressly imposes financial obligations on a psychological parent, we find support for the proposition that such obligations may be imposed in the statute and in case law precedent.

¶ 16    "When interpreting a statute, we strive to give effect to the legislative purposes by adopting an interpretation that best effectuates those purposes."  *In re Marriage of Joel & Roohi*, 2012 COA 128, ¶ 18.  Section 14-10-115(1)(a) outlines the statute's purpose:

---

creating the Colorado State Advisory Council for Parent Involvement in Education defines parent as "a child's biological parent, adoptive parent, or legal guardian or another adult person recognized by the child's school as the child's primary caregiver."); § 22-33-104.5(1)(b), C.R.S. 2018 (Under school attendance law of 1963, "'[p]arent' includes a parent or guardian.").

(I) To establish as state policy an adequate standard of support for children, subject to the ability of parents to pay;

(II) To make awards more equitable by ensuring more consistent treatment of persons in similar circumstances; and

(III) To improve the efficiency of the court process by promoting settlements and giving courts and the parties guidance in establishing levels of awards.

The first two purposes are relevant to our analysis. Imposing financial obligations on a psychological parent helps to establish an adequate standard of support. And when a psychological parent occupies circumstances equivalent to those of a legal parent, it is equitable to impose financial obligations on him or her, pursuant to the factors outlined in the statute. To that end, our courts have interpreted the term "parent," as used in the child support statute, to include adoptive parents. *See In re Marriage of Ashlock*, 629 P.2d 1108, 1109 (Colo. App. 1981).

¶ 17    Divisions of this court have upheld orders that child support be paid by a person who is neither a biological nor an adoptive parent. We conclude that a survey of those decisions, as well as those reversing orders awarding child support against nonbiological

parents, provides guidance and informs how we should decide this case.

¶ 18     In *People in Interest of P.D.*, 41 Colo. App. 109, 580 P.2d 836 (1978), the district court permanently terminated the parental rights of the child's natural parents and awarded a husband and wife legal and physical custody of the child, anticipating that they would complete adoption proceedings. *See id.* at 111, 580 P.2d at 837. But before any adoption proceedings were initiated, the custodial parents filed a dissolution action. *See id.* The resulting decree of dissolution awarded custody of the child to the wife and required the husband to pay child support, despite the husband's request to terminate custody and the accompanying child support obligation. *See id.*

¶ 19     In reversing, the division held that because the husband was only the child's legal custodian, and not an adoptive parent, he was serving in a voluntary capacity and could end his support obligation at will. *See id.* at 112-13, 580 P.2d at 838. Pertinent to the court's decision was the fact that the husband had filed a motion to terminate legal custody of the child. *Id.* at 111-12, 580 P.2d at 837.

¶ 20    By contrast, in *In re Marriage of Bonifas*, 879 P.2d 478, 478 (Colo. App. 1994), the couple signed an agreement to adopt a child and expressly agreed to assume "full financial responsibility for a child" and pay all expenses relating to the care of the child.  The couple raised the child for ten years but did not complete the formal adoption.  *Id.*  When the couple separated, the district court ordered the husband to pay child support for the child, noting that he had accepted "full financial responsibility for a child."  *Id.* at 479.

¶ 21    On appeal, the husband argued that he had no duty to support the child under the decision in *P.D.* and the child support statute.  *Id.*  The division agreed with husband.  *Id.*  But it concluded that, under a contract theory, husband's agreement to provide financial support was binding on him, and the child was a third-party beneficiary of that agreement.  *Id.*  The division also concluded that the husband had received some benefit of the agreement as he was awarded "liberal visitation rights" with the child.  *Id.* at 479-80.

¶ 22    In *In re Marriage of Rodrick*, 176 P.3d 806 (Colo. App. 2007), the division affirmed an order directing a custodial father to pay child support for a nonbiological child as part of a dissolution

proceeding. Pursuant to an "Order of Permanent Parental Responsibility" the husband and wife had obtained custody of the biological child of a friend and had raised the child in their home for several years. *Id.* at 809. As described by the division, the parental responsibility order was designed to be a step toward adopting the child, but adoption proceedings were not commenced. *Id.* The couple later separated and filed a dissolution proceeding. *Id.* at 809-10. Husband stated at the dissolution hearing that he wanted parenting time with the child but argued that since he was only a legal guardian of the child, he had no duty to pay child support under section 14-10-115. *Id.* at 810. Relying on *Bonifas*, the district court concluded the husband had a contractual duty to support the child and awarded child support. *Id.*

¶ 23    The division affirmed the order awarding child support but did so on statutory grounds. The division concluded that

> [t]he parental responsibility order was entered under § 14-10-123, which is part of article 10 of title 14. It established a child support obligation by imposing the duties on husband and wife, described in § 19-1-103(73)(a), to provide [the child] with the necessities of life. Therefore, the trial court had the authority, under § 14-10-115(1) and (17), to order husband to pay child support.

11

*Id.* at 812. The division distinguished this case from *P.D.* because husband had not asked the court to relieve him of custody or terminate his relationship with the child; rather, he wanted "parenting time and parental decision-making responsibility." *Id.*

¶ 24    In *People in Interest of B.S.M.*, 251 P.3d 511 (Colo. App. 2010), the stepfather, who was not the child's adoptive parent, declined to exercise parenting time despite an out-of-state joint custody order. He then refused to take custody of the child during a dependency and neglect proceeding against the mother. *Id.* at 512. The Department of Human Services initiated a petition and obtained an order from the district court directing that, as joint custodian, stepfather was obligated to support the child financially and pay foster care fees incurred for the child. *Id.*

¶ 25    A division of this court, relying on (1) the definition of "parent" in the Children's Code, *see* §§ 19-1-115(4)(d), -103(82)(a), C.R.S. 2018, as the child's natural parent or parent by adoption; (2) *P.D.*'s holding that a child's legal custodian may elect to terminate that status at any time and has no legal obligation to continue supporting the child; and (3) the distinction in *Rodrick* that the

12

psychological parent in that case had sought parenting time, reversed the financial award against the stepfather. *Id.* at 513-14.

¶ 26 And in *Sidman v. Sidman*, 240 P.3d 360, 362-63 (Colo. App. 2009), the division determined that only the parents' income, and not the guardians' income, can be included when determining child support payable to the guardians under section 14-10-115. *See id.* at 362. This was appropriate, said the division, because there was no parental responsibility order and the guardians did not hold themselves out as the child's "de facto parents," but instead were designated his legal guardians by a court order. *Id.* at 362-63.

¶ 27 Thus, the amicus brief correctly points out that Colorado has not obligated a nonbiological or nonadoptive parent to financially support another's natural child, absent the exception of an expressed intent to adopt. But none of the relevant cases involved a biological parent seeking child support from a recognized psychological parent who had raised and supported a child as his own, taken real and substantial legal steps to seek and maintain the same parental rights as the biological parent, and obtained a court order enforcing those rights.

13

¶ 28    In those cases where child support was ordered to be paid, *Bonifas* and *Rodrick,* a common and, perhaps decisive, factor was that the husband who was ordered to pay child support had sought and received a continuing relationship with the child.  This is the case with Hill.  In those cases where child support was not ordered, *P.D.* and *B.S.M.,* the husband and stepfather, respectively, had taken affirmative steps to terminate the relationship with the child.

¶ 29    While we found no Colorado decision that deals with the precise circumstances in this case — where a psychological parent sought and fought for the same parental responsibilities as a natural or adoptive parent — cases from other states have addressed this situation and their decisions have heavily weighted the actions of a psychological parent who seeks to maintain a parental relationship with a child in determining child support obligations.

¶ 30    A very recent Alaska Supreme Court decision addressed this scenario.  In *Moore v. McGillis*, 408 P.3d 1196 (Alaska 2018), the stepfather, in petitioning for dissolution of marriage, sought legal and physical custody for his biological daughter and his stepson, the mother's child from a previous relationship.  *Id.* at 1198.  He

had established himself as the stepson's psychological parent and had received summer and holiday visitation and shared legal custody of him. *Id.* A few years later, the stepson's biological father reappeared and intervened in the case. *Id.* at 1198-99. The mother argued that the stepfather could not maintain custody of the stepson and yet absolve himself of his child support obligation. *Id.* The Alaska Supreme Court agreed with mother:

> [Stepfather] has not sought to disestablish his parental relationship to the [stepson] here. The trial court found that he has continued to act as the boy's psychological father, and [he] has fought for and obtained continued physical and legal custody of the child. We have stated that those with legal custody of a child are obliged to support that child.

*Id.* at 1203.

¶ 31 A decision by the Pennsylvania Supreme Court on this issue is also pertinent. In *A.S. v. I.S.*, 130 A.3d 763 (Pa. 2015), the child's stepfather "haled a fit [biological mother] into court, repeatedly litigating to achieve the same legal and physical custodial rights as would naturally accrue to any biological parent." *Id.* at 770. The court described the case as not a typical one "of a stepparent who has grown to love his stepchildren and wants to maintain a

15

post-separation relationship with them." *Id.* Instead, the stepfather "ha[d] litigated and obtained full legal and physical custody rights, and ha[d] also asserted those parental rights to prevent a competent biological mother from relocating with her children." *Id.* The Pennsylvania Supreme Court held that, because the stepfather had "taken sufficient affirmative steps legally to obtain parental rights," he "should share in parental obligations, such as paying child support." *Id.* at 770-71. The supreme court added, "[e]quity prohibits [the] [s]tepfather from disavowing his parental status to avoid a support obligation to the children he so vigorously sought to parent." *Id.* at 771.[3]

¶ 32     The reasoning in these cases is persuasive. Here too, Hill held himself out as A.F.'s father, almost from birth, by treating him as

---

[3] Michigan, New Jersey, and Connecticut courts have also held that a stepparent's duty to pay child support after divorce can be enforced by applying principles of estoppel. *See Nygard v. Nygard,* 401 N.W.2d 323, 326-27 (Mich. Ct. App. 1986) (applying promissory estoppel to conclude that a husband who had agreed to raise an unborn child as his own could be held responsible for child support); *see also Miller v. Miller,* 478 A.2d 351, 357-58 (N.J. 1984) (applying equitable estoppel to enforce child support where the husband had discussed adopting the wife's children and he had prohibited any support from or visitation with the natural father during their marriage); *W. v. W.,* 779 A.2d 716, 720-22 (Conn. 2001). Mother in this case does not assert an estoppel theory.

his own. They lived together as a family for nearly four years, and Hill is the only father A.F. has ever known. And even after the parties broke up, Hill did not take his relationship with A.F. for granted. He exercised equal parenting time with the child for the next six years. When mother wanted to relocate with the child to Texas, he initiated an allocation of parental responsibilities, including a PRE investigation, and, at all times, he insisted that he be named the child's primary parent in Colorado. In the end, after numerous hearings, the court ultimately granted him an order for parenting time and decision-making responsibility for the child.

¶ 33    We laud his efforts to maintain this bond with the child, but with the privileges of parenting should go the duties, including financial support. We cannot embrace a situation in which a psychological parent who fights for and obtains all the same responsibilities of a legal parent does not also assume the responsibility to pay child support. We find these circumstances much more akin to those in *Bonifas* and *Rodrick* (where parents attempted adoption and continued a parent-child relationship) than to *P.D.* and *B.S.M.* (where former stepfathers denied that they were the child's parent).

¶ 34    We emphasize that here, as in *Rodrick*, the court has entered a parental responsibilities order under section 14-10-123 that was intended to be permanent. Like the order entered in *Rodrick*, the parenting time and decision-making order entered in favor of Hill imposes a duty to provide the child with the necessities of life. *Rodrick*, 176 P.3d at 812.

¶ 35    We conclude that in cases like *Rodrick* and this one the district court has the authority to determine that a psychological parent owes a "duty of support" to the child within the meaning of section 14-10-115(2), and, upon such a finding, the district court has the authority to impose a child support obligation on a psychological parent.

¶ 36    We emphasize that our opinion is limited to those psychological parents who have (1) established themselves as "parents," rather than "guardians"; and (2) sought and received an intended-to-be-permanent allocation of parental responsibilities. We are not creating a new class of stepparent obligors, nor are we suggesting that the mere existence of a psychological parent-child relationship, on its own, establishes a support obligation under section 14-10-115. And we note that our opinion does not mean

that A.F.'s biological father, if found, is relieved from his duty to support his child.

¶ 37    We acknowledge that the district court was persuaded on public policy considerations in reaching its decision. Citing *B.S.M.*, 251 P.3d at 514, it stated:

> A stepparent who tried to create a warm family atmosphere with his or her stepchildren would be penalized by being forced to pay support for them in the event of a divorce. At the same time, a stepparent who refused to have anything to do with his or her stepchildren beyond supporting them would be rewarded by not having to pay support in the event of a divorce.

The court further indicated that if it were to "impose a child support obligation on [Hill] for caring for [A.F.] as if he were his own son, it would unfairly penalize him for behavior that should be encouraged, and it would create a perverse incentive for him to diminish the relationship in order to reduce his child support obligation." And when considering the broader implications, it added, "Good-[S]amaritan relatives who [take] on substantial responsibilities with minimal or no compensation, could find their humanitarian good deeds penalized in the form of a substantial child support order."

19

¶ 38     But Hill here did more than create a "warm family atmosphere" with A.F. *See id.* He took active legal steps to place himself on equal footing with the biological mother and prevent her relocation. And he sought an allocation of *parental responsibilities*, rather than an order of guardianship. By concluding that a psychological parent, under these circumstances, is responsible for child support, we "increase the likelihood that only individuals who are truly dedicated and intend to be a stable fixture in a child's life will take the steps to litigate and obtain rights equal to those of the child's parent." *See A.S.,* 130 A.3d at 771.

## III.  Conclusion

¶ 39     We reverse that part of the district court's order holding that it was foreclosed from ordering Hill to pay child support as to A.F., and we remand with directions to further consider Hill's child support obligations in accordance with section 14-10-115.

JUDGE ROMÁN and JUDGE BERGER concur.